## SMITH *v.* BOLLES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 47. Argued October 31, 1889. — Decided November 11, 1889.

In an action in the nature of an action on the case to recover from the defendant damages which the plaintiff has suffered by reason of the purchase of stock in a corporation which he was induced to purchase on the faith of false and fraudulent representations made to him by the defendant, the measure of damages is the loss which the plaintiff sustained by reason of those representations — such as the money which he paid out and interest, and all outlays legitimately attributable to the defendant's fraudulent conduct; but it does not include the expected fruits of an unrealized speculation.

In applying the general rule that "the damage to be recovered must always be the natural and proximate consequence of the act complained of" those results are to be considered proximate which the wrong-doer, from his position, must have contemplated as the probable consequence of his fraud or breach of contract.

THE court in its opinion, stated the case as follows:

Richard J. Bolles filed his petition against Lewis W. Smith on the twenty-first day of February, 1884, in the Circuit Court of the United States for the Northern District of Ohio, to recover damages for alleged fraudulent representations in the sale of shares of mining stock, in place of which an amended petition was substituted on the second day of March, 1886, by leave of court. The amended petition set up five causes of action: First. That in the fall of 1879 defendant and one Joseph W. Haskins entered into a fraudulent combination to form an incorporated mining company based upon alleged mining property in the Territory of Arizona, and for the alleged purpose of mining silver ore therefrom and milling the same for market; that the title to the property was claimed to be in Haskins; that Haskins and others organized said corporation under the laws of New York, by the name of "The Irene Mill and Mining Company," with a capital of two mil-

lions of dollars, divided into one hundred thousand shares of twenty dollars each; that Haskins took the whole of the stock and paid for the same by transferring to the company the alleged mining property, and apparently for the sum of two millions of dollars; that Haskins and defendant then represented that sixty thousand shares of said stock were issued to or paid for by Haskins, and were deposited with the treasurer of the company, to be sold to subscribers and purchasers, and the proceeds to be applied to the construction of a stamp mill to be connected with the supposed mining property, and for the purpose of further sinking the shaft and tunnel then in progress; that the defendant had in connection with Haskins some interest in the stock, the extent of which was then and is still unknown to plaintiff; that plaintiff was wholly ignorant of the value of the stock and of the mining property on which it was supposed to be based, never having dealt in such stock or property; that in the month of February, 1880, the defendant applied to him to buy and subscribe for some of the stock, stating that he was interested in it, and that before acquiring an interest he had learned from Haskins the enormous value of the property, and to satisfy himself had gone to Arizona and thoroughly examined it; that he then represented to plaintiff a variety of facts as existing in respect to the mine, making it of great value, which representations are set forth in detail; and that having known the defendant for several years, and believing him to be a truthful and honest man, and without knowledge or suspicion that said representations were untrue, but believing and relying on the same, the plaintiff had, at the request of the defendant, in the month of February, 1880, agreed to buy of the defendant four thousand shares of the stock, at $1.50 per share, which contract was completed in the month of March, 1880, by the payment in full of the purchase price, to wit, six thousand dollars, to one H. J. Davis, who claimed to act as treasurer of the company, and from whom plaintiff received certificates for the stock. Plaintiff then alleged that said representations were each and all false and fraudulent, specifically denying the truth of each of them, and averring that "said stock and mining property

was then, and still is, wholly worthless; and that had the same been as represented by defendant it would have been worth at least ten dollars per share, and so plaintiff says that by reason of the premises he has sustained damages to the amount of forty thousand dollars." Second. That defendant made similar false and fraudulent representations to John H. Bolles, by which the latter was induced to purchase two thousand shares of the stock, at the price of $1.50 per share, and was, by reason of the premises damaged to the extent of six thousand dollars; and that John H. Bolles had transferred his claim to the plaintiff, who was entitled to recover of defendant said sum. Third. That defendant made similar false and fraudulent representations to L. W. Marsteller, who was thereby induced to purchase eight hundred shares of said stock, at the price of two dollars per share, and was damaged by reason of the premises to the extent of two thousand dollars, and had transferred his claim to the plaintiff, who was therefore entitled to recover said sum of the defendant. Fourth. That the defendant had made similar false and fraudulent representations to Mrs. Mary Manchester, and induced her, in reliance thereon, to purchase two hundred and twenty-five shares of the stock, at a cost (according to the original petition) of four hundred and fifty dollars, and she had incurred damages thereby to the extent of fifteen hundred dollars; that this claim had been assigned to the plaintiff, who was entitled to recover said sum of the defendant. Fifth. That defendant made similar false and fraudulent representations to one John Van Gassbeck, who was induced thereby to purchase twenty-five hundred shares of the stock, at two dollars per share, making five thousand dollars, which he had paid to defendant, and he was by reason of the premises damaged to the extent of ten thousand dollars; and that Van Gassbeck had transferred this claim to the plaintiff, whereby the latter was entitled to recover said sum of the defendant.

Plaintiff further averred that the aggregate of said damages amounted to sixty thousand five hundred dollars, for which he prayed judgment.

Defendant answered plaintiff's petition, admitting the incorporation and organization of the "Irene Mill and Mining Company," but denying all and singular the remaining allegations of the petition, and further set up affirmatively the statute of limitations.

The second and fourth causes of action as set forth in the original petition, founded on the claims of John H. Bolles and Mary Manchester, sought merely a rescission of the contracts and to recover back all the money they had respectively paid for shares of stock, but by the amended petition their causes of action were changed to counts for the recovery of damages resulting to said John H. and Mary from the alleged false and fraudulent representations.

The cause was tried by a jury and resulted in a verdict for the plaintiff, assessing his damages at the sum of eight thousand one hundred and forty dollars, upon which, after a motion for a new trial had been made by the defendant, and overruled, judgment was rendered, and the cause was then brought here on writ of error.

*Mr. W. W. Boynton,* (with whom was *Mr. J. C. Hale,* and *Mr. Edward H. Fitch* on the brief,) for plaintiff in error, cited: *Claflin* v. *Commonwealth Ins. Co.,* 110 U. S. 81; *Myers* v. *Malcolm,* 6 Hill, 292; *S. C.* 41 Am. Dec. 744; *Moody* v. *Osgood,* 50 Barb. 628; *Lincoln* v. *Claflin,* 7 Wall. 132; *Castle* v. *Bullard,* 23 How. 172; *Butler* v. *Watkins,* 13 Wall. 456; *Walker* v. *Stetson,* 14 Ohio St. 89; *S. C.* 84 Am. Dec. 362; *Bullard* v. *Boston & Maine Railroad,* 64 New Hampshire, 27; *Brown* v. *Swineford,* 44 Wisconsin, 282; *Cleveland Paper Co.* v. *Banks,* 15 Nebraska, 20; *Grosse* v. *State,* 11 Texas App. 377; *Conn* v. *State,* 11 Texas App. 390; *Willis* v. *McNeill,* 57 Texas, 465; *Thompson* v. *State,* 43 Texas, 268; *Union Central Life Ins. Co.* v. *Cheever,* 36 Ohio St. 201; *State* v. *Noland,* 85 North Carolina, 576; *Butler* v. *Slam,* 50 Penn. St. 456; *People* v. *Mitchell,* 62 California, 411; *Tucker* v. *Henniker,* 41 New Hampshire, 317; *Rolfe* v. *Rumford,* 66 Maine, 564; *Winter* v. *Sass,* 19 Kansas, 556; *State* v. *Lee,* 66 Missouri, 165; *State* v. *King,* 64 Missouri, 591; *Wolffe* v. *Minnis,* 74 Alabama, 386; *Besette* v. *State,* 101 Indiana, 85; *People* v. *Dane,* 59 Michigan, 550.

*Mr. E. J. Estep*, for defendant in error, cited: *Hubbard* v. *Briggs*, 31 N. Y. 518; *Crater* v. *Binninger*, 33 New Jersey Law (4 Vroom), 573; *S. C.* 97 Am. Dec. 737; *Hatcher* v. *State*, 18 Georgia, 460; *Logan* v. *Monroe*, 20 Maine, 257.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The bill of exceptions states that the court charged the jury " as to the law by which the jury were to be governed in the assessment of damages under the issues made in the case," that " the measure of recovery is generally the difference between the contract price and the reasonable market value, if the property had been as represented to be, or in case the property or stock is entirely worthless, then its value is what it would have been worth if it had been as represented by the defendant, and as may be shown in the evidence before you."

In this there was error. The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. The gist of the action was that the plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations, and so as to the other persons on whose claims the plaintiff sought to recover. If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay

legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation. The reasonable market value, if the property had been as represented, afforded, therefore, no proper element of recovery.

Nor had the contract price the bearing given to it by the court. What the plaintiff paid for the stock was properly put in evidence, not as the basis of the application of the rule in relation to the difference between the contract price and the market or actual value, but as establishing the loss he had sustained in that particular. If the stock had a value in fact, that would necessarily be applied in reduction of the damages. "The damage to be recovered must always be the *natural and proximate consequence* of the act complained of," says Mr. Greenleaf, Vol. 2, § 256; and "the test is," adds Chief Justice Beasley in *Crater* v. *Binninger*, 33 N. J. Law (4 Vroom) 513, 518, "that those results are proximate which the wrong-doer from his position must have contemplated as the probable consequence of his fraud or breach of contract." In that case, the plaintiff had been induced by the deceit of the defendant to enter into an oil speculation, and the defendant was held responsible for the moneys put into the scheme by the plaintiff in the ordinary course of the business, which moneys were lost, less the value of the interest which the plaintiff retained in the property held by those associated in the speculation. And see *Horne* v. *Walton*, 117 Illinois, 130; *Same* v. *Same*, 117 Illinois, 141; *Slingerland* v. *Bennett*, 66 N. Y. 611; *Schwabacker* v. *Riddle*, 84 Illinois, 517; *Fitzsimmons* v. *Chipman*, 37 Mich. 139.

We regard the instructions of the court upon this subject as so erroneous and misleading as to require a reversal of the judgment. The five causes of action covered the purchase of nine thousand five hundred and twenty-five shares of stock, for which $16,050 in the aggregate had been paid. The plaintiff did not withdraw either of his five counts, or request the court to direct the jury to distinguish between them. The verdict was a general one for $8140, and, while it may be quite probable that the jury did in fact, as counsel for defend-

ant in error contends, award to the plaintiff, under his first cause of action, the sum he had paid for the shares he had purchased himself and interest, we cannot hold this as matter of law to have been so; nor can we determine what influence the erroneous advice of the learned judge may have had upon the deliberations of the jury.

Other errors are assigned, which we think it would subserve no useful purpose to review. They involve rulings, the exceptions to which were not so clearly saved as might have been wished, had the disposal of this case turned upon them, and which will not probably, in the care used upon another trial, be repeated precisely as now presented.

For the error indicated,

*The judgment is reversed and the cause remanded with a direction to grant a new trial.*