### CHANDLER v. ANDREWS.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

#### No. 18.

**1. TRIAL (§ 340*)—VERDICT—AMENDMENT—POWER TO MAKE.**

Where the jury returned a verdict for plaintiff on a specified cause of action without finding on other causes of action submitted, the trial judge properly refused, after the jury had been discharged, to amend the verdict to show a finding for defendant on the other causes of action, no attempt having been made to have the jury interrogated as to their finding on them.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 795–799; Dec. Dig. § 340.*]

**2. FRAUD (§ 58*)—SALE—MISREPRESENTATIONS—VALUE OF PROPERTY—EVIDENCE—SUFFICIENCY.**

In an action for inducing plaintiff to purchase bonds under false representations, evidence *held* to sustain a finding that the bonds were not worth what plaintiff paid for them.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 58.*]

**8. FRAUD (§ 59*)—SALE—MISREPRESENTATIONS—MEASURE OF DAMAGE.**

In an action for inducing plaintiff to purchase bonds under false representations, it was error to instruct that plaintiff's measure of damages was the difference between the actual value of the bonds and what their value would have been if the representations had not been untrue and to refuse to instruct that the measure was the difference between the contract price and the actual price.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 59.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Emma D. Andrews against Alfred N. Chandler. From a judgment for plaintiff, defendant brings error. Reversed.

P. S. Russell, for plaintiff in error.

W. M. Geer, Jr., for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff sued to recover damages arising out of the purchase by her from the defendant of eight different investments induced, as she alleges, by his false and fraudulent representations upon which she relied. One of these investments consisted of eighteen $1,000 bonds of the Westchester Traction Company, bought March 16, 1904, at 95 per centum.

The verdict of the jury was "for the plaintiff in the matter of the Westchester Traction Company for $17,515." It was a sealed verdict, the jury having retired the afternoon before and attended the next morning to be present at the opening and reading of their verdict. When it was read the sixth juror stated that he had some remarks to make, whereupon the jury was polled, and each of the other eleven answered that he found for the plaintiff in the amount that appeared in the sealed verdict. The sixth juror answered that he "found for the plaintiff with some further remarks he wished to make." The following colloquy ensued:

"The Court: This is the verdict of the jury. There is not any criticism, is there? The Sixth Juror: Yes; there is. The Court: The court will not hear any criticism. Ask the juror how he finds. The Clerk: Robert Coleman, how do you find? The Sixth Juror: I signed that verdict; yes, sir."

As soon as the jury was polled defendant's counsel asked to be allowed to examine juror No. 6 on the question as to whether he has or has not agreed with the various other members of this jury upon the verdict as rendered here. This request was denied and exception reserved, but such denial has not been assigned as error.

[1] On the afternoon of the same day, the jury having in the meantime been discharged, defendant's counsel moved to amend the verdict by adding the words "and for the defendant on all other causes of action set forth in the complaint." This motion was also denied, and such denial constitutes one of the assignments of error.

We think this assignment is without merit. The verdict was incomplete in not containing any express finding as to seven of the causes of action. It would have been entirely proper for the court to have interrogated the jury specifically as to their finding on these seven causes of action, and thereupon the verdict might have been amended to express the conclusions of the jury. It might have been error to refuse thus to interrogate the jury, if either side had asked to have it done. But no such request was made and we are clearly of the opinion that the trial court had no power to amend the verdict of the jury, after they were discharged, upon a mere guess as to what their finding was upon matters touching which they had not expressed themselves.

[2] Defendant contends that the court erred in not directing a verdict in his favor, on two grounds: First. That the case was devoid

of proof that defendant knew of the alleged falsity of the representations. Direct proof of an individual's mental processes is rarely available; there was sufficient in the case to warrant the jury in inferring knowledge on his part from facts in proof; that is if they discredited his own testimony. Second. That there is no proof that the bonds sold were not on March 16, 1904, worth dollar for dollar what the plaintiff paid for them. We think the jury were warranted in finding the opposite of this proposition from the testimony in the case. This is more fully discussed infra.

[3] Error was committed in instructing the jury as to the measure of damages. The court charged that, in the event of recovery, the plaintiff "is entitled to an award of the difference between the actual value of the bonds and what their value would have been if the representations had not been untrue." This is the rule in the New York courts, and indeed in most of the states. See citations in 20 Cyc. 133. The Supreme Court, however, has prescribed a different measure of damages, which is, of course, controlling on the federal courts. Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. Ed. 113. Exception was reserved to this part of the charge and to a refusal to charge that "the measure of damages, if any be found, shall be the difference between the contract price and the actual price," which is the form approved in Smith v. Bolles.

It is conceded by plaintiff that this was error, but she contends that such error could not have prejudiced the rights of defendant, and consequently affords no ground for reversal.

The verdict of the jury was for the exact amount plaintiff paid for the bonds; therefore it is apparent that they found the bonds to be wholly worthless. The question was as to the value of the bonds on March 16, 1904, and there was much testimony about conditions then existing. The jury had a right to deduce a value for the bonds from evidence of the character and condition of the railroad before that date and after it. On the one side it is contended that the bonds had no value, because the old Ossining Road which the Westchester Traction Company had purchased depended for a future value upon being linked up with other roads to make a through route between more extended terminals. It was bought from a receiver for $33,000, in 1901. It consisted of a single track overhead trolley road two and a half miles long with five closed and three open cars, secondhand when originally purchased, a brick power house containing boilers, dynamo, and repair shop. The fares collected in 1900 were $8,000 odd. The same in 1901 and about $15,000 in 1905. There was no record of the fares in 1903 and 1904. The property progressively ran down while operated by the Westchester Traction Company until it was sold by a receiver in 1908 for $2,700, there being then at least $300,000 of bonds outstanding. On the other side it is urged that in 1904 the old Ossining Road, although physically worth little, had its franchise, not yet attacked by the Attorney General, and the Westchester Traction was either turning the cash it received for its bonds into a connection

192 F.—35

which might make it valuable, or still held in its treasury the cash received from those bonds.

Upon the whole testimony the verdict could not be set aside as against the evidence, if it found that the bonds had a substantial value in 1904; nor if it found that they had no value then.

If we were satisfied that the jury were not misled as to the real question before them, viz., the value of the bonds on March 16, 1904, we might reach the conclusion that the error in the instruction as to the measure of damages was not prejudicial. But we feel no such assurance; they must have been confused as to the time at which value was to be determined. In the course of the charge the court said to the jury:

"It is perfectly true that in the future these bonds may have a value, indeed, have a value now. It is for you to say whether they have a value, on this testimony."

It may be indicative of what the jury understood this instruction to mean that, at the close of the charge the sixth juror asked:

"If we decide that the stocks (bonds) have no present value, how can we decide as to No. 7 (the Westchester Traction bonds)?"

To which the court replied:

"If you cannot come to any conclusion that ends it."

Shortly thereafter the defendant requested the court to charge "that the receivership (of Westchester Traction in 1908) does not in itself prove worthlessness (of the bonds)." This request was refused, and its refusal may very well have misled the jury. We are not satisfied that the conceded error in the charge as to measure of damages was not prejudicial to defendant.

Judgment reversed.