## TOWLE v. MAXWELL MOTOR SALES CORPORATION.

Circuit Court of Appeals, Eighth Circuit.
May 1, 1928.

No. 7835.

**1. Fraud ⊚=58(1)—Evidence held not to show alleged misrepresentations by agent of automobile manufacturer inducing plaintiff to guarantee debts of dealer.**

In action for damages because of alleged false representations made by agent of defendant automobile manufacturer, alleged to have induced plaintiff to guarantee debts and running expenses of dealer in defendant's automobiles, resulting in plaintiff being compelled to pay losses of such agency, evidence *held* not to show alleged misrepresentations by defendant's agent.

**2. Fraud ⊚=11(1), 12—Statements of opinion, prediction, or promise held not grounds for recovery of damages for false representations.**

Statements by defendant's agent, giving his opinion, prediction, or promise as to future course of business, but which were not representations of fact, are not grounds for recovery of damages for alleged false representations.

**3. Fraud ⊚=59(3)—Measure of damages for purchase induced by fraudulent representations is difference between value of property received and value of what purchaser parted with, plus legitimate outlays.**

When a purchase is induced by fraudulent representations of the seller, purchaser's measure of damages is difference between real value of property received under contract at date of sale and actual value of what purchaser parted with for its purchase, plus outlays as are legitimately attributable to the representations.

**4. Fraud ⬤==64(1)—Directed verdict for defendant, in action for false representations inducing entry into guaranty contract, held proper, in absence of evidence whereby damages could be ascertained.**

In action for damages because of alleged false representations made by agent of defendant automobile manufacturer, inducing plaintiff to guarantee debts of dealer in defendant's automobiles, directed verdict for defendant *held* proper, in view of lack of evidence whereby plaintiff's damages could be ascertained, in that prices at which dealer received automobiles and prices at which they were sold was not shown, nor was expense of dealer in conducting sale of defendant's automobiles shown in proportion to entire expense.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by John W. Towle against the Maxwell Motor Sales Corporation. Judgment for defendant on a directed verdict, and plaintiff brings error. Affirmed.

Glenn N. Venrick, of Omaha, Neb. (Francis H. Mayo, of Omaha, Neb., on the brief), for plaintiff in error.

Harold R. Smith, of Detroit, Mich. (David A. Fitch, of Omaha, Neb., and Harry C. Bulkley, of Detroit, Mich., on the brief), for defendant in error.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff in error brought suit to recover damages because of alleged false representations made by the agent of defendant in error. The case was tried to a jury, but at the close of the plaintiff's evidence the court directed a verdict in favor of the defendant. The correctness of that ruling is the only question presented by this record. Briefly stated, the plaintiff claimed that he was induced to guarantee the debts and running expenses of a firm (and its successor) which dealt in automobiles, because he believed the statements made by the defendant's agent, and, as the result of a long conduct of this business, the plaintiff was compelled to pay the losses of these dealers. The plaintiff, an experienced business man, was one of the owners of a business building in Omaha, Neb. This building was occupied by two tenants who were engaged in the sale of automobiles. For some time they had been in arrears in the payment of rents for the building. The plaintiff was desirous of a continued occupancy of the building by tenants who would agree to pay the current rental of $1,200 per month. The tenants learned that they might secure an agency for the sale of Maxwell and Chalmers automobiles, if they could furnish acceptable guarantors for their purchases. After a conversation with Mr. Page, an agent of the defendant, the plaintiff agreed to furnish the money and credit needed to conduct the agency. For that purpose he signed a continuing guaranty of any debts that the agents should incur. One of the terms of the guaranty contract was that the guarantor could at any time terminate his liability for obligations of the partnership executed thereafter, by giving notice. The two tenants and a third person thereupon entered into a partnership to conduct the agency, and made a contract with the defendant, dated July 12, 1922, by which it acquired a right to sell at Omaha, Neb., and adjacent territory such Maxwell automobiles as it should order until July 1, 1923. A rate of discount from current list prices was agreed upon. This contract provided that either party could cancel it upon 15 days' notice. At the same time the partnership entered into a similar contract with the Chalmers Motor Car Company for the sale of Chalmers automobiles. The partnership bought and sold a number of these automobiles, and furnished repairs and mechanical services. It continued business until December 15, 1922. One of the partners then withdrew from the firm, and a new partner was added. The loss from the conduct of the business to that time was $2,036.37. The plaintiff, on December 16, 1922, signed an agreement guaranteeing the obligations of the new partnership on the same terms as in the former guaranty. The new partnership leased additional room, and it added an agency for the sale of the Jordan automobile, which continued until July, 1923. The new partnership continued to lose money, but on July 3, 1923, it renewed the contracts with the defendant and with the Chalmers Motor Corporation, whereby it continued its agency for another year. The losses continued and increased each month. On July 1, 1924, a corporation was formed to succeed to the partnership, and it took an assignment from the partnership of the agency contracts. The plaintiff gave promissory notes for the amount of the partnership debts to that time. The corporation continued the business at a loss, and in August, 1924, it made a new contract with the defendant to continue to sell the automobiles made by it. Some time later the agency was discontinued.

In the trial of this case, it was the theory of the plaintiff that the defendant was

liable for the amount of all net losses the partnership suffered in conducting the business during 1922 and 1923 to the extent that the plaintiff had guaranteed such losses and had paid or had become obligated to pay them, because of false representations made to him by the defendant's agent, on which he had relied in signing the guaranties.

[1] Of the misrepresentations relied upon, the first is that the defendant's agent, on July 7 or 8, 1922, stated that the company which held the agency at Omaha for the Maxwell and Chalmers automobiles was doing a good and profitable business. In attempted disproof of this statement, an auditor of that company testified that the company's business had been conducted at a loss from December, 1921, to October, 1922. The representation relied upon fixed no specific time to which it applied, but a reasonable interpretation of the words used is that it applied to the period recently elapsed before the conversation. The proofs in the record seem to indicate that the spring and summer months are the most favorable for the sale of automobiles, and that a business of that nature, which may be unprofitable in the fall and winter seasons, may be profitable in the spring and summer. There was no evidence to show that the business of the former agency had not been profitable in the period recently preceding the conversation. The evidence went no further than to show that no profit had been made in the whole period between December, 1921, and October, 1922, but during a portion of this period, from a time in July until October, the company had not had the agency for these cars, and this portion of the time was after the conversation which plaintiff relies upon.

The second misrepresentation was alleged as a statement made at the time of this conversation to the effect that the prior agency had been selling an average amount of $300 to $400 worth of automobile parts per day, at a profit of more than $100 per day. A witness was produced by the plaintiff who testified that the amount of the daily average sales of such parts by the prior agency had been from $125 to $135 per day during a period of one and a half years, but there was no proof that the defendant's agents had made any statement about the average sales of the prior agency. He had said that the amount of the daily sales was between $300 and $400 per day at a profit of 35 per cent., or more than $100 per day. This statement may have been correct as applied to the recent conduct of the business.

The third representation was that the prior agency had established 35 or 40 subagencies. It was shown that there were but 14 of these agencies which the defendant in error or the Chalmers Motor Car Company had approved, although there were a number of subagencies which had not been approved. There was no evidence as to the effects of these subagencies, whether any sales had been made by them, or whether they caused a profit or loss to the Omaha dealer.

The fourth representation, as it was pleaded, was a statement that the Maxwell and Chalmers automobiles (1) then being sold and distributed by the defendant were well and carefully built; (2) and were of good quality in material and workmanship; (3) that certain defects which had previously existed in these automobiles had been corrected, and as a result they were attaining a good reputation. The proofs materially varied from these allegations, showing that the agent stated that the Maxwell car had had a bad reputation, arising from a car made years before, but that these defects had been corrected, and that the car was then a first-class automobile. The testimony as to the condition of the automobiles which were sold to the agents whose debts the plaintiff guaranteed, did not disprove the statements of the defendant's agent, either as pleaded or proved. It was admitted that very few of the automobiles purchased were of the 1922 model, which was the automobile the defendant's agent had spoken about, and there was no evidence of the amount of trouble, if any, which arose from these automobiles. There was some testimony about the qualities of the 1923 model of the Maxwell automobiles, which were sold later to the dealer, but this testimony did not show defects in the vehicles. The only evidence for the plaintiff on this subject ascribed the qualities of the vehicle which he criticized to the engineering principles adopted. The real criticism was that a better design could have been adopted as to portions of the vehicle; that is, that a better vehicle could have been built. There was no proof of what defects had previously existed, and no proof that, if any defects had existed in former vehicles, they had not been corrected. There was no proof that other automobiles, of the same or of any other class were not subject to similar criticism of the engineering principles adopted in some of their features, nor that other automobiles were not subject to breakage and failure of appliances to function under use.

[2] There were other statements alleged to have been made by the defendant's agent, giving his opinion, prediction or promise as to the future course of the business, but these were not representations of fact, and on well-recognized principles were not grounds for recovery in an action of this kind.

[3] If it be conceded that the plaintiff proved some definite and material misstatement of fact, and that the plaintiff, relying upon that statement, became a guarantor of these partnerships to his loss, and that he could recover because of such misrepresentations, there is no evidence whereby his damages may be ascertained. The plaintiff presented the case upon the theory that, if one or more of the representations alleged was made, the defendant would be liable for the amount of any net loss sustained by the dealers in the conduct of their business during the year and a half succeeding the misrepresentation. In undertaking this business, the dealers assumed the usual hazards. Its success or failure necessarily involved decisions upon many questions of business policy for which the defendant would not be responsible. The location of the place of business, the business experience of those conducting it, the amount of capital employed, the general business conditions in that vicinity, were factors to be considered. The nature of the articles dealt in, the competition of other dealers, the personality of the officers and employees, the nature of the expenses, such as rent, interest, taxes, advertising, and wages, the margin between purchase and sale prices, the amount of credit extended, and many other problems of a mercantile business, affected the question of profit or loss of the conduct of the business. The purchaser's measure of damages when the purchase is induced by the fraudulent representations of the seller, is the difference between the real value of the property he received under the contract at the date of the sale, and the actual value of what he parted with for its purchase plus such outlays as are legitimately attributable to the representations. Smith v. Bolles, 132 U. S. 125, 126, 10 S. Ct. 39, 33 L. Ed. 279; Sigafus v. Porter, 179 U. S. 116, 123, 125, 21 S. Ct. 34, 45 L. Ed. 113; Rockefeller v. Merritt (C. C. A.) 76 F. 909, 914, 35 L. R. A. 633; Tooker v. Alston (C. C. A.) 159 F. 599, 603 (16 L. R. A. [N. S.] 818); Nupen v. Pearce (C. C. A.) 235 F. 497, 501.

[4] The proofs in this case do not show the prices at which the dealers received automobiles, parts, or accessories from the defendant, nor the prices at which they were sold. It is not shown what part of the expense of doing business was attributable to the conduct of the business in Maxwell automobiles, as compared to the total expense of doing business, which included the sale of Chalmers and Jordan automobiles, not made nor sold by the defendant. So far as appears from the record, the business resulting from the contract made with the defendant may have been profitable. There was no specific amount of expense or outlay which was traced as the result of any of the representations claimed to have been made by the defendant. Because of the lack of proofs, the direction of a verdict in favor of the defendant was not erroneous, and this conclusion makes it unnecessary to consider other questions which have been presented.

The judgment will be affirmed.