Herman L. ZELLER, Plaintiff,

v.

**BOGUE ELECTRIC MANUFACTURING CORPORATION et al., Defendants.**

**No. 71 Civ. 5502.**

United States District Court, S. D. New York.

Aug. 7, 1972.

---

652

Powers & Gross, New York City, for plaintiff, by Lawrence M. Powers, New York City, of counsel.

Becker, Ross & Stone, New York City, for defendants Bogue Electric Manufacturing Corp., Edward P. Schinman, Robert S. Herwig, William S. Guttenberg and Murray Reiffin, by Alexander Stone, James J. Ross, William C. Kratenstein, New York City, of counsel.

D'Amato, Costello & Shea, New York City, for defendant Irwin Small & Co., by Richard G. McGahren, New York City, of counsel.

Barry Kessler, New York City, for defendant Belco Pollution Control Corp.

GURFEIN, District Judge.

This is a derivative action on behalf of a corporation to recover damages from members of its board of directors, its controlling shareholder and its accounting firm, that accrued as a result of an alleged scheme to defraud the corporation in violation of Rule 10b–5 and § 10(b) of the Securities Exchange Act of 1934 (17 C.F.R. § 240.10b–5, 15 U.S. C. § 78j(b)).[1] The action was commenced December 16, 1971 by a shareholder of Belco Pollution Control Corporation (Belco) against Bogue Electric Manufacturing Corporation (Bogue), which owned almost 75% of Belco's outstanding shares; and against a group of individual defendants, consisting of an interlocking board of directors between Belco and its parent Bogue; and against a public accounting firm which allegedly participated in the alleged scheme to defraud.

The essential complaint is that the securities laws were violated by the defendants in making and concealing a series of cash advances from Belco to Bogue over a period of two years, ultimately evidenced by a promissory note which is alleged to be a "security" within the meaning of § 3(a) (10) of the Securities Exchange Act of 1934 (15 U.S. C. § 78c(a) (10)), and ultimately secured by a purportedly fraudulent and misleading collateral arrangement whereby 150,000 shares of common stock of Belco owned by Bogue were deposited "in trust" in order to secure payment of the note. It is alleged that the factual details of this continuing transaction were concealed in several filings made with the Securities and Exchange Commission (SEC) which were also available

---

I. The complaint also invokes § 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)).

to public shareholders; and that the securities transaction complained of resulted in Belco being defrauded of $315,310, with a resulting loss of return on this working capital, over a two year period; and that it also cost Belco additional consequential damages.

The complaint alleges that Bogue and its director-defendants caused Belco to lend it money without security in violation of the securities laws and in breach of their fiduciary obligations to Belco. These loans are alleged to have been made during 1970 and 1971, the total owing to Belco by Bogue as of June 30, 1971 being the sum of $315,310. It was alleged, on information and belief, that such loans had not been repaid. It is further alleged that a disclosure made to the SEC on Form 10–Q for the six months ended June 30, 1971 was false and misleading;[2] and that the misleading "disclosure" caused an underwriter to walk away from a deal to offer 150,000 units of Belco securities at $11 per unit.

The complaint seeks judgment against Bogue, the individual defendants and the accounting firm for the amount of all outstanding loans, advances and improper withdrawals with interest on the total amount at the rate of 7¼% per annum from the date of each withdrawal of funds complained of. It also seeks an accounting and injunctive relief, in addition to a claim for damages in the amount of $1,500,000 which, it is said, would have been the proceeds of the underwriting. Finally, the plaintiff asks for reasonable attorneys' fees, and costs and disbursements.

The plaintiff now moves for summary judgment on the issue of liability alone under Fed.R.Civ.P. 56(c). He contends that there are no issues of fact regarding liability, but concedes that a hearing would have to be held on the question of damages. The defendants other than Belco oppose the motion for summary judgment and cross-move for summary judgment or for an order dismissing the complaint for want of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h) (3).

On this set of motions, the defendants have established by affidavits that the stock of Belco owned by Bogue was sold on May 1, 1972 to the Foster Wheeler Corporation, a stranger, and that Bogue then repaid the entire amount owing to Belco with interest at 8%, more than the 7¼% claimed in the complaint.

The defendants contend that the derivative 10b–5 claim must be dismissed because: (1) Belco suffered no out-of-pocket loss by reason of the alleged acts; and (2) the transactions complained of did not involve a "security" or the "purchase or sale" of a security. The defendants contend that, in any event, summary judgment in favor of the plaintiff cannot be granted because: (1) there are questions of fact relating to breach of fiduciary duty, intent, the use of facilities of interstate commerce, and the adequacy of disclosures; and (2) the complaint fails to allege a deception of Belco.

The facts on which the parties appear to agree substantially are these. The loans were originally made by Belco to Bogue on open account. Later a promissory note of Bogue was given to Belco with 150,000 shares of Belco stock as collateral to be held in escrow against payment by the joint attorney for both corporations. When the consolidated loan was ultimately paid the collateral was turned over to the purchaser, Foster Wheeler, and the promissory note cancelled.

2. The disclosure read:
"The sum of $315,310 as of June 30, 1971, representing loans to its parent Company, Bogue Electric Manufacturing Company was secured on July 1, 1971 by a Promissory Demand Note in that amount plus interest, collateralized by 150,000 shares of investment Belco Common Stock owned by Bogue, which shares are to be held in trust by a designated Trustee pending the payment of such obligation. Such collateralized shares bear an appropriate legend."

Turning first to the defense that there was no out-of-pocket loss to Belco and hence that there can be no Rule 10b–5 recovery, the question is whether a 10b–5 claim can survive when an improperly made loan has been repaid.[3] That is, is this a case of *damnum absque injuria*?

 Under the Securities Exchange Act of 1934, a buyer claiming a violation of 10b–5 must show that he has been damaged.[4] Estate Counseling Service, Inc. v. Merrill, Lynch, 303 F.2d 527, 533 (10 Cir. 1962), and see cases there cited; Smith v. Murchison, 310 F.Supp. 1079, 1084 (S.D.N.Y.1970); cf. Levine v. Seilon, Inc., 439 F.2d 328, 334 (2 Cir. 1971); Nichols v. Alker, 231 F.2d 68, 78 (2 Cir.), cert. denied, 352 U.S. 829, 77 S.Ct. 42, 1 L.Ed.2d 51 (1956).

The long-standing federal rule of damages for fraud is the "out-of-pocket rule," that is, the difference between the amount parted with and the amount received. Smith v. Bolles, 132 U.S. 125, 10 S.Ct. 39, 33 L.Ed. 279 (1889); Chandler v. Andrews, 192 F. 543, 545 (2 Cir. 1911). This liability does not include the expected fruits of an unrealized transaction. Smith v. Bolles, *supra.*

The measure of damages for a 10b–5 claim is fixed by the 1934 statute in Section 28(a) (15 U.S.C. § 78bb(a)), which permits recovery only of "his actual damages on account of the act complained of." And "actual damages" has been read to mean out-of-pocket damages for the defrauded buyer, as calculated under the old federal rule for fraud. *Levine, supra; Estate Counseling Service, supra*; 6 L. Loss, Securities Regulation 3923 (1969).

In calculating out-of-pocket loss in this case, it is relevant to note that at common law it has been generally held that a director's liability for wrongfully making or approving a loan is the amount of the loan. 3 W. Fletcher, Cyclopedia Corporations § 1343 (1965 rev.

vol.), citing Medford Trust Co. v. McKnight, 292 Mass. 1, 197 N.E. 649 (1935). The defendants are entitled to credit for salvage on the loans. See Corsicana Natl. Bank v. Johnson, 251 U.S. 68, 86–87, 40 S.Ct. 82, 64 L.Ed. 141 (1919). In other words, the only money which left Belco's "pocket" was the amount of the loan; on the other hand, the conjectured return, if the loan had been otherwise invested, is not recoverable. Likewise, alleged damages stemming from the abortive underwriting are not only speculative but do not come within the out-of-pocket rubric.

Since the measurable out-of-pocket loss in this case has been recompensed, there is no longer a claim under § 10(b) and Rule 10b–5; with that falls any claim based on pendent jurisdiction.

Summary judgment is granted on behalf of the defendants.

It is so ordered.

---

3. The same reasoning set out in text applies to the claim under § 17(a) of the 1933 Act.

4. I mention "buyer" because plaintiff contends that Belco "bought" a "security," i. e., the promissory note of Bogue.