# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00263-CV

---

**Dong Sheng Huang, Appellant**

**v.**

**GTECH Corporation, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-14-005114, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Dong Sheng Huang appeals from the trial court's grant of summary judgment in favor of GTECH Corporation.[1]  Because we hold that Huang has not proven damages for fraud or fraud by nondisclosure, we affirm.

## BACKGROUND[2]

In September 2014, the Texas Lottery launched retail sales of a "scratch-off" or "instant" ticket known as "Fun 5's," which combined five different instant games onto a single ticket and was sold for a retail price of $5 each.  Game 5 on the ticket, a tic-tac-toe game, is the

---

[1] GTECH is now known as IGT Global Solutions Corporation.  Because the parties have continued to identify the relevant entity as GTECH, so have we.

[2] Much of the background of this case has been detailed by this Court and the supreme court in a related appeal.  *See GTECH Corp. v. Steele*, 549 S.W.3d 768, 770–73 (Tex. App.—Austin 2018), *aff'd sub nom. Nettles v. GTECH Corp.*, 606 S.W.3d 726, 729–30 (Tex. 2020).

focus of this dispute and appeared at the bottom right portion of the ticket. This is an example of how a Texas Fun 5's ticket that had been scratched off would appear:



To offer this ticket, the Texas Lottery Commission (the Commission), which is owned and operated the Texas Lottery, purchased the game, which had already been offered in

other states, from GTECH.[3]  After the Commission selected the game, GTECH submitted working papers to the Commission with images of the ticket, detailed specifications, and game parameters.  The proposed instructions for the tic-tac-toe game provided:  "Reveal three Dollar Bill '[dollar bill icon]' symbols in any one row, column, or diagonal line, win PRIZE in PRIZE box.  Reveal a '5' symbol in the 5X BOX, win 5 times that PRIZE."  The working papers specified that a 5 symbol would appear in the 5X box only on eligible winning tickets.

The Commission proposed changes to the tic-tac-toe game, requesting that the dollar-bill symbol be changed to a 5 symbol and that the multiplier 5 symbol in the 5X box be changed to a money-bag symbol.  The Commission also requested that the money-bag symbol appear not only on winning tickets but also on some non-winning tickets in order to prevent microscratching—using a sharp object to reveal a microscopic portion of a ticket to determine whether it is a winner.  GTECH implemented the requested changes, with the result that the multiplier symbol that had been designed for use only on tickets containing a winning tic-tac-toe game also appeared on some non-winning tickets.  After reviewing the instructions printed on the ticket, GTECH determined they did not need to be changed, other than to reflect the new symbols.  The instructions on tickets sold in Texas read:  "Reveal three '5' symbols in any one row, column, or diagonal, win PRIZE in PRIZE box.  Reveal a Money Bag '[money bag icon]' symbol in the 5X BOX, win 5 times that PRIZE."

---

[3]  Senate Bill 3070 abolished the Texas Lottery Commission in 2025 and transferred its duties to the Texas Department of Licensing and Regulation and Texas Commission of Licensing and Regulation effective September 1, 2025.  Act of June 2, 2025, 89th R.S., ch. 1160, § ___, 2025 Tex. Gen. Laws ___, ___ (amending the Government Code, Occupations Code, Penal Code, and Transportation Code to repeal provisions relating to the Texas Lottery Commission and set out provisions transferring the administration of the state lottery and the licensing and regulation of charitable bingo to the Texas Commission of Licensing and Regulation and the Texas Department of Licensing and Regulation).

Immediately after the tickets were offered in Texas, Lottery players and retailers began calling the Commission and GTECH about the game, saying that they thought the money-bag symbol on a ticket meant an automatic win of five times the amount in the prize box. Callers complained that the game instructions were misleading, leading players to believe that they had winning tickets even though they had not also won the tic-tac-toe game. Legislators also contacted the Commission regarding constituent complaints that the instructions were misleading. As a result of this confusion, the Commission shut down the game on October 21, 2014.

More than 1,200 named plaintiffs sued GTECH in Travis County, asserting claims for fraud, fraud by nondisclosure, aiding and abetting the Commission's fraud, tortious interference with the plaintiffs' contracts with the Texas Lottery, and conspiracy with the Commission. Some, like Huang, became plaintiffs by intervening in the suit. Huang alleged that the ticket's design coupled with the instructions printed on the ticket misled him into believing that tickets that included a money-bag symbol won five times the prize shown in the prize box, whether or not the ticket also contained a winning tic-tac-toe combination. He sought only the benefit of the bargain as the measure of actual damages. GTECH filed a plea to the jurisdiction against all plaintiffs, arguing that because their claims were premised on conduct controlled by the Commission, derivative sovereign immunity barred these claims against GTECH. The trial court denied GTECH's plea, and this Court affirmed in part and reversed and rendered in part. *GTECH Corp. v. Steele*, 549 S.W.3d 768, 802–03 (Tex. App.—Austin 2018), *aff'd sub nom. Nettles v. GTECH Corp.*, 606 S.W.3d 726, 729–30 (Tex. 2020). We reversed and rendered judgment dismissing the claims of aiding and abetting fraud, tortious interference, and conspiracy because they implicated sovereign immunity. *Id.* at 796. But we affirmed the trial

4

court's denial of the plea as to the claims for fraud and fraud by nondisclosure, which related to actions taken by GTECH within its independent discretion. *Id.* at 802–03. The supreme court affirmed, *Nettles*, 606 S.W.3d 726, after which GTECH reached a settlement with some plaintiffs, then moved for summary judgment against non-settling plaintiffs, including Huang.

GTECH filed a no-evidence motion for summary judgment, arguing that Huang's claim for fraud by nondisclosure failed as a matter of law because there was no evidence that GTECH owed "Huang a duty to disclose the information complained about in Dong Sheng Huang's most recent petition." It also filed a traditional motion for summary judgment asserting that Huang was not entitled to benefit-of-the-bargain damages. The hearing was set for December 17, 2024. Huang timely responded to the motions. He then contacted the trial court, seeking permission to appear virtually at the hearing. Court staff responded that he could do so with GTECH's written agreement. GTECH agreed, and correspondence reflecting the parties' agreement was forwarded to the trial court. Huang alleges that he called the trial court the day before the hearing to confirm whether he needed to attend the live hearing, and court staff advised him that the motions against him had been "taken out," and that she would check on the matter with GTECH. Huang also emailed the trial court to confirm that he would be able to attend the hearing remotely. Court staff replied, "I spoke with counsel, we will set another court date for you to appear remotely." Huang therefore did not attend the hearing. At the hearing, the trial court considered the summary-judgment motions against Huang along with those pending against approximately fifty other plaintiffs. All were granted.

Huang moved to reconsider, arguing against the substance of the summary-judgment motions and also urging that the trial court erred in hearing the motions

against him after telling him that those motions would be heard at another time. The trial court denied Huang's motion.

Huang appeals, asserting that the trial court erred in granting the motions against him because the trial court's communications caused him to not attend the hearing on his motions, the trial court erred in granting traditional summary judgment against him because he was entitled to recover benefit-of-the-bargain damages from GTECH, and the trial court erred in granting GTECH's no-evidence motion because he presented some evidence that GTECH had a duty to disclose pertinent information that would have clarified the ticket's winning conditions.

## DISCUSSION

**Oral hearing on summary judgment**

Huang asserts that the trial court erred in granting the summary-judgment motions against him because "no hearing was held for GTECH's [summary-judgment] motions related to Huang," and he emphasizes that he did not attend the in-person hearing that was held because of the trial court's communications stating that his motions would not be considered at the hearing and that the trial court would "set another court date for [him] to appear remotely."

"Our rules of civil procedure prescribe guidelines to ensure the parties receive notice and a meaningful opportunity to be heard." *B. Gregg Price, P.C. v. S Series 1 – Virage Master LP*, 661 S.W.3d 419, 424 (Tex. 2023); *see* Tex. R. Civ. P. 166a(c) (summary-judgment motion must be served on opposing party at least twenty-one days before time specified for hearing).[4] Rule 166a(c) of the Texas Rules of Civil Procedure calls for a hearing on a motion for

---

[4] The Texas Supreme Court recently amended Texas Rule of Civil Procedure 166a, but "[o]ther than the deadline changes, Rule 166a's rewrite is not intended to substantively change the law." Tex. R. Civ. P. 166a (cmt. to 2026 change). The amendments renumbered the rule's

6

summary judgment, but it need not be an oral hearing. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam); *see Long v. Yurrick*, 319 S.W.3d 944, 948 (Tex. App.—Austin 2010, no pet.) ("Due process does not require an oral hearing on a motion for summary judgment . . . ."). Notice of the submission date, however, is required so that parties have an opportunity to respond to the motion. *Martin*, 989 S.W.2d at 359; *Long*, 319 S.W.3d at 948; *see Courtney v. Gelber*, 905 S.W.2d 33, 34 (Tex. App.—Houston [1st Dist.] 1995, no writ) (trial court erred in deciding summary-judgment motion when parties passed hearing on motion before response was due, response was not filed, and trial court later granted motion without notice to any party). Although failing to provide notice of the submission date is error, the supreme court has concluded that such error is harmless error when the nonmoving party has had an opportunity to respond and any timely filed response has been considered by the trial court in reaching its conclusion. *See Martin*, 989 S.W.2d at 359; *Long*, 319 S.W.3d at 948 (holding trial court's grant of no-evidence motion for summary judgment the day before it was set for hearing was harmless error when nonmovant did not file response, even though nonmovant's reason for not responding was that trial was set hours before the summary-judgment was set for hearing).

Here, court staff misinformed Huang of the submission date for the motions by telling him his motions would not be heard at the impending hearing and that another hearing date would be set. Consequently, the trial court erred by nonetheless hearing the motions on the original hearing date. The error was harmless, however, because Huang filed responses to the

provisions. *See* Supreme Court of Tex., Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). Because the amendments apply only to summary-judgment motions filed on or after March 1, 2026, and the filing of GTECH's summary-judgment motion preceded the amendments, we refer to the provisions of Rule 166a in effect at the time of filing. *See id.*

motions, and the record shows that the trial court considered those responses. *See Martin*, 989 S.W.2d at 359. The record of the summary-judgment hearing shows that the trial court was aware that Huang had responded to the motions, and counsel for GTECH briefly advised the court of some of Huang's arguments. Huang does not assert that he would have sought to present additional arguments or evidence at any reset hearing. The trial court also confirmed its ruling when it decided Huang's motion to reconsider. Accordingly, because the record reflects that the trial court considered Huang's responses, the trial court's failure to notify Huang of the motion's submission date was harmless error, and we overrule Huang's issue regarding the court's not providing him an oral hearing on the summary-judgment motions.

**Traditional summary judgment**

We next consider whether the trial court erred by granting GTECH's traditional motion for summary judgment. In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists, and the trial court should grant judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Gill v. Hill*, 688 S.W.3d 863, 868 (Tex. 2024), *cert. denied*, 145 S. Ct. 274 (2024). The nonmovant must then present evidence raising a fact issue. *First Sabrepoint Capital Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d 75, 84–85 (Tex. 2025). "We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Id.* at 84 (quoting *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024)).

In its traditional motion, GTECH asserted that Huang was not entitled to benefit-of-the-bargain damages as a matter of law. Both Huang's remaining claims—fraud and

fraud by nondisclosure—require proof of damages. *See Butler v. Collins*, 714 S.W.3d 562, 565 n.2 (Tex. 2025) (listing elements of fraud) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied) (listing elements of fraud by nondisclosure and citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) ("Fraud by non-disclosure is simply a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts.")).

As a measure of actual damages, Huang sought to receive the benefit of the bargain. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 49 ("Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure."). "Benefit-of-the-bargain damages, which derive from an expectancy theory, evaluate the difference between the value that was represented and the value actually received." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (citing *Formosa Plastics Corp. USA*, 960 S.W.2d at 49). Benefit-of-the-bargain damages are determined at the time of sale. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997).

Huang contends that the value of the ticket at the time of sale, while not known to him, was nevertheless established as the five times the amount of PRIZE if this Court agrees that the instructions fraudulently represented that tickets containing a money-bag symbol were winning tickets. Assuming that Huang correctly interpreted the instructions, that the ticket's value was established though unknown to him, and that a retail purchase is a "bargain" such that a customer would be entitled to seek benefit-of-the-bargain damages relating to that purchase, we

9

still conclude that Huang was not entitled to recover benefit-of-the-bargain damages for his purchase.

At the time of purchase, the value of the ticket, from Huang's perspective, depended entirely upon chance. *See* Tex. Gov't Code § 466.002(5) ("Lottery means the procedures operated by the state under this chapter through which prizes are awarded or distributed by chance among persons who have paid, or unconditionally agreed to pay, for a chance or other opportunity to receive a prize"). In determining the proper measure of damages in the context of a purchase of land based on a fraudulent misrepresentation that the land had a valuable feature that, in reality, did not exist on the property, the Texas Supreme Court in *George v. Hesse* held that "the extent of [the plaintiff's] loss is the difference between the value of that which he has parted with, and the value of that which he has received under the agreement." 93 S.W. 107, 107–08 (Tex. 1906). In reaching that conclusion, the Texas Supreme Court relied on a doctrine explained by the U.S. Supreme Court in *Smith v. Bolles*, 132 U.S. 125, 129–30 (1889), a case that "involved solely the question of the measure of damages in a case of fraudulent representations." *George*, 93 S.W. at 108. In *Smith*, the plaintiff purchased shares of mining stock based on representations that the value of the stock significantly exceeded the purchase price, then sued when it became evident that the representations were entirely false. *Smith*, 132 U.S. at 125. The trial court had charged the jury that the measure of recovery

> is generally the difference between the contract price and the reasonable market value, if the property had been as represented to be, or in case the property or stock is entirely worthless, then its value is what it would have been worth if it had been as represented by the defendant, and as may be shown in the evidence before you.

10

*Id.* at 129. In other words, the *Smith* trial court concluded the plaintiff could seek the benefit of the fraudulent bargain. The U.S. Supreme Court reversed, explaining:

> The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor, if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase.

*Id.* Thus, the court held that the plaintiff's recovery was limited to out-of-pocket damages. The defendant "was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation." *Id.* at 130.

Huang likewise cannot recover benefit-of-the-bargain damages, particularly when the benefit was unknown to him at the time he entered the bargain. Absent an award of actual damages, Huang cannot recover exemplary damages. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex. 1985). Therefore, we conclude that the trial court did not err in granting GTECH's traditional motion for summary judgment, and we overrule Huang's issue on this point. Since this issue disposes of both the fraud and fraud by nondisclosure claims, we need not address Huang's issue relating to the trial court's grant of GTECH's no-evidence motion relating to fraud by nondisclosure.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's grant of traditional summary judgment.

11

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed:   June 19, 2026