326 P.2d 1019

**W. P. ROGERS and Magna Mining Co., a New Mexico Corporation, Plaintiffs and Respondents,**

**v.**

**UNITED WESTERN MINERALS CO., a Delaware Corporation, Defendant and Appellant.**

**No. 8787.**

Supreme Court of Utah.

June 30, 1958.

Gustin, Richards & Mattsson, John T. Vernieu, Richfield, for appellant.

Olsen & Chamberlain, Richfield, for respondents.

WADE, Justice.

This is an appeal from a judgment granted W. P. Rogers and Magna Mining Co., plaintiffs below and respondents herein, against the United Western Minerals Co., appellant herein, for past due installments on a contract for sale of mining claims.

The respondents as sellers and appellant as buyer entered into a contract the portions of which are pertinent in this suit read as follows:

"2. The consideration for the sale and purchase of said Coleman Canyon group of mining claims is the sum of One Hundred Fifty-five Thousand Dollars ($155,000.00), to be paid as follows:

\* \* \* \* \* \*

"(c) The balance of $125,000.00 shall be paid in the following ways at the option of the Buyer: At the option of Buyer, to be exercised upon acceptance of title to this group of claims, buyer may pay up to $62,500.00 of said amount in stock of Buyer's corporation at a value of $1.00 per share, or any portion less than $62,500.00 in such stock. The balance of the $125,000.00 purchase price not so paid for in stock shall be paid for out of 15% of the gross mineral production from said group of claims. \* \* \*

"3. As to the payment of the purchase price out of production, this payment shall be 15% of the gross mill receipts of all minerals and metals mined and produced from such claims, but there shall be no actual payment due to sellers by buyer for six months after the date of this agreement; however, the obligation shall accrue during said period as to any minerals produced and marketed even though payment is delayed until six months from the date of this agreement. Thereafter, payment shall be made monthly and buyer shall keep accurate books and records and render an accounting monthly to the sellers with the remittance of the 15%

of the gross receipts from said claims; provided, however, that buyer at its option, may pay $500.00 per month after six months from the date of this agreement in lieu of working and mining said claims, so that buyer shall have the obligation of either continuously mining and operating said claims so long as ore or minerals can be produced therefrom in commercial quantities, or if it fails to do so, shall pay sellers the sum of $500.00 each and every month in lieu of production. The sum of $500.00 per month so paid shall be credited upon the unpaid balance of the purchase price.

\*      \*      \*      \*      \*      \*

"10. In the event the buyer fails to make the payments for the balance of the purchase price on the Coleman Canyon group of claims out of the production from said claims or fails to operate and mine said group and does not pay the $500.00 per month on the purchase price as hereinabove provided, then and in any of such events, the sellers at their option may retake title to all of the Coleman Canyon group of claims, in which event the buyer shall have no further or other obligation relative thereto, or at seller's option, may pursue any other legal remedy which they may have against the Buyer. It is understood and agreed that the payment out of production of the Coleman Canyon group of claims shall be a lien running with the title to said claims until the full purchase price is paid, and that any assignee or transferee of said claims shall specifically take subject to the obligation of the payment out of production therefrom as provided in this agreement."

No payments were made on the $125,000 balance of the purchase price by the buyer and the sellers brought this suit alleging breaches of the contract for failing to continuously operate and develop the mining claims and for failure to make payments of at least $500 per month after they became due under the contract and further pleaded the provision whereby the title to the property could be retaken by the sellers upon breach of the contract by the buyer. They asked the court to grant them a judgment for $500 per month commencing with the month of April, 1956, plus interest and for a reconveyance of the mining claims.

At the pre-trial of this action respondents were required to make an election of remedies. They decided to seek judgment for the balance of the purchase price at the rate of $500 per month rather than reconveyance of the mining claims.

Appellant contends that under the express terms of the contract pleaded in this action it did not.become obligated to make any payment on the balance of the purchase price unless ore in commercial quantities could be produced and that an allegation to this

**4**

effect was a necessary condition precedent to a cause for action. It further contends that since respondents' complaint did not contain such an allegation the court erred in failing to sustain appellant's general demurrer to the complaint and in removing as an issue from the case whether ores in commercial quantities could be produced and that payment of any kind on the balance of the purchase price was dependent upon the ability to produce.

In support of this argument appellant calls attention to the provision of paragraph 2, subparagraph c, that the balance of the purchase price of $125,000 not paid for by appellant's stock is to be paid for out of 15% of the gross mineral productions from the claims and the provisions of paragraph 3 that appellant has the obligation of "continuously mining and operating the claims as long as ore or minerals can be produced therefrom in commercial quantities" or else pay $500 per month in lieu of production for each month it does not mine and operate under such conditions, the $500 per month to be applied on the purchase price. This they contend can only mean that payments on the balance due are to be made out of ores produced from the claims and at the option of appellant at the rate of $500 in lieu of such production if it were possible to produce in commercial quantities and appellant did not desire to do so.

Respondents answer and appellant agrees that a contract must be read in its entirety to obtain the intent of the parties thereto.[1] Respondents call attention to the fact that the parties entered into a contract of sale whereby the sellers agreed to sell and the buyer agreed to buy the mining claims for a certain specified sum, namely $155,000, $30,000 of which was paid in the manner agreed before conveyance. They point out that if appellant's argument were valid it would be within its power to change the agreed purchase price to a sum different from that expressly specified in the contract and that such an interpretation would be unreasonable and that the provisions of paragraphs 2 and 3 relating to payment out of production refer merely to the rate of payments in the event there is production, or if appellant cannot or will not produce it must pay at least $500 per month until the full amount of the purchase price has been paid. Such an interpretation, respondents claim, would give effect to all the terms of the contract and is the only reasonable interpretation thereof.

■■ Each party contends that the provisions of the contract are not ambiguous and that the only reasonable interpretation of all its terms is in accordance with such party's construction. A careful consideration of all of the terms of the contract shows it to be ambiguous and its express terms are

1. Gates v. Daines, 3 Utah 2d 95, 279 P.2d 458.

irreconcilable: The contract provides for the payment of a definite, specified amount, not conditioned upon any contingency, yet the method of payment makes no provision for the time or manner of payment where minerals cannot be produced therefrom in commercial quantities. We conclude that there is an ambiguity in the contract which can only be explained by evidence dehors the contract. However, it should be noted here that the burden of proving that ores or minerals in commercial quantities could not be produced from the claims, should that question be material, is upon appellant as an affirmative defense since it has been in possession of the claims since the execution of the contract and the facts on this subject are peculiarly within its knowledge.

Appellant further contends that respondents had elected in their complaint to retake title to the claims as provided in the contract and therefore could not at the pre-trial elect to take another remedy. There is no merit to this contention. Respondents in their complaint asked for two remedies, i. e. for payment due under their interpretation of the contract and for reconveyance. Paragraph 10 of the contract gave them the right in the event of a breach to pursue any legal remedy they might have or to take a reconveyance. Rule 8(e), U.R.C.P., allows the pleading of inconsistent remedies. Although under the contract respondents were not entitled to both the remedies they sought, they did not by seeking both remedies in their complaint make the election provided for in the contract. The election of remedies was not made until respondents were required to do so upon demand of appellant at the pre-trial.

Reversed with instructions to proceed in accordance with this opinion. Both parties to bear their own costs.

McDONOUGH, C. J., and CROCKETT, WORTHEN, and HENRIOD, JJ., concur.