Harry MORGAN, William G. Gianetto, Milton F. Morgan, Milton A. Oman and Interstate Mining and Exploration Corporation, Plaintiffs,

v.

HIDDEN SPLENDOR MINING COMPANY, Defendant.

No. C-56-57.

United States District Court
D. Utah,
Central Division.

Jan. 2, 1959.

Milton A. Oman and Herschel J. Saperstein (of Oman & Saperstein) Salt Lake City, Utah, for plaintiffs.

Paul B. Cannon and Richard H. Nebeker (of Marr, Wilkins & Cannon), Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

Enough already has been mentioned concerning the general nature of the case in ruling on a pre-trial motion, Morgan v. Hidden Splendor Mining Co., D.C.D. Utah, Cent. D., 155 F.Supp. 257, to make an extended introductory statement unnecessary.

The case has now been tried to a jury. By the charge, the jury was advised that on the undisputed facts defendant had done $78,941 worth of work to which it was entitled to credit as against its $200,-000 exploration obligation. Answers to special interrogatories submitted with the general verdict indicated the jury's view that an additional $39,852 worth of work had been done off the plaintiffs' claims for their exclusive exploration and development, making a total of $121,-059 to be credited against the defendant's contracted obligation and leaving an unperformed balance of $81,207, for which a general verdict was returned against the defendant.

The responses to special interrogatories also indicated the jury's belief that the lease providing that defendant should do $200,000 exploration and development work for plaintiffs' claims within a specified time had not been forfeited or terminated by plaintiffs to bar their recovery.

Plaintiffs moved the court to increase the amount of the verdict to the sum of $121,059 by disregarding the amount of work which the jury found had been done by the defendant off the claims, on the theory that as a matter of law no part of such work would entitle defendant to credit against its contracted obligation. Defendant has moved that the court set aside the $81,207 judgment against it and enter judgment of "no cause of action" in its favor in accordance with its pre-verdict motion, or in the alternative, that plaintiffs' judgment be reduced by $50,000.

The questions thus presented involve construction of integrated contracts concerning the exploration of plaintiffs' mining claims, sufficiency of the evidence and the propriety of jury instructions concerning alleged forfeiture of the contract, the amount of credits to which defendant is entitled as against its contractual obligations, and the effect of notices of "forfeiture" and "cancellation" upon accruing obligations under the contracts. The only further background facts that require special notice for an understanding of the following discussion are believed to be those concerning the relative situations of the plaintiffs' and defendant's mining claims. Plaintiffs' "MGM" claims are located atop a high bluff, access to which at present is limited to helicopters, hikers, or mule or donkey packs. The defendant's Delta claims are located mainly along the precipitous slopes of, and off, the bluff. This circumstance points up the basic conflict between the parties of whether and to what extent exploration work by the plaintiff on its own Delta claims rather than the more difficult operations directly on the MGM claims could be deemed for the "exclusive exploration" of the latter claims as contemplated by the agreement between the parties.

■ Consistent with views expressed by the court during the oral argument, plaintiffs' motion is denied. The agreement between the parties by its terms contemplated that under some circumstances there could be work done off the plaintiffs' claims which would be considered for their "exclusive exploration". The jury reasonably found that certain portions of work done off plaintiffs' claims were, in fact, done for the exclusive operation thereof and in that respect the verdict should stand.

■ One of the stated bases for defendant's motion that the verdict be set aside and a judgment of "no cause of action" entered obviously is without merit, if not frivolous. Special interrogatory No. 1 asked the jury in substance whether any work done upon the "Delta claims" in areas colored in green on a certain exhibit were done "for the exclusive exploration and development" of plaintiffs' "MGM claims". This question was answered in the affirmative, and in answers to other interrogatories the jury stated specifically what part of the work done on areas so marked in green was done for the exclusive exploration of plaintiffs' claims. Defendant's point now seems to be that having found that some of the work represented on the exhibit in green was so done, the court should deem all of it as having been so done for the exclusive exploration of plaintiffs' claims. The jury's response to the interrogatories, taken singly or as a whole, preclude any such construction or any uncertainty. If defendant means that no distinction between one area marked in green and another so marked could have been drawn reasonably by the jury, this appears to the court clearly not so. There were valid bases for distinction, especially between the areas near to the plaintiffs' claims, work on which the jury allowed, and the areas far removed from plaintiffs' claims which obviously involved work wholly for the benefit of the defendant's own "Delta claims". I thought the jury did a rather nice job in drawing such distinctions. However, if no distinctions were legally permissible, defendant would not be helped since there would then be established what plaintiffs contended at the trial, that work in none of the areas marked in green could be deemed for the "exclusive exploration" of plaintiffs'

claims, since obviously much of it could not possibly have been so considered.

■ The other basis of defendant's attack upon the judgment is that plaintiffs forfeited the lease agreement under which arose defendant's obligation to do the $200,000 of exploration and development work; hence, is in no position to recover damages based on such forfeited provisions. This attack assumes various forms—against the instructions of the court on the basis of which the jury found that there was no forfeiture, attempts to capitalize upon arguments of plaintiffs' counsel or comments of the court in connection with pre-trial motions, the contention that the evidence established forfeiture as a matter of law, and finally, repetition of the same arguments that were advanced in support of defendant's original motion to dismiss, fully considered in the previous memorandum decision.

I am sure that the instructions to the jury on the question of forfeiture were far from models. I am also of the opinion, however, that in the respects, if any, that they were uncertain, inadequate or inaccurate these deficiencies favored the defendant and were rendered moot by the jury's answers to the special interrogatory resolving the issue of forfeiture in favor of plaintiffs. The basic difficulty encountered in instructing upon the subject was that there was little, if any, question of fact for the jury to decide since practically all of the circumstances involved were without dispute and showed rather clearly that there was no forfeiture. There was nothing brought out at the trial which changed in any respect the law or equities dealt with in the prior decision; in fact, the evidence disclosed affirmatively that there was no acceptance, reliance or change of position whatever on the part of the defendant as a result of the notice of which it now seeks to take advantage. The insistence of the defendant at all times prior to serving its own notice of cancellation that it was required to take no position with reference to whether there had been a forfeiture but that it could by reliance upon plaintiffs' letter protect itself from any possibility on any and all theories, while at the same time retaining and claiming to itself the possession of the property, has amounted almost to a fixation. The dilemma it sought to present to the plaintiffs, and later in argument to the court, that if it had done the exploration work it claimed there would be no right of recovery even though there had been no valid forfeiture, and if it had not done the work it claimed there would have been a forfeiture, also relieving it from liability, is more apparent than real. Lawsuits should not be decided by gimmick, nor should rights be acquired or lost through mere formalistic applications.

The evidence indicated, and the jury found in effect that on the date of the notice in question the defendant was in default, notwithstanding its inflated claim to credits for work done on its own property and largely for its own benefit. The notice was obviously a further effort to induce the defendant to perform its contract. To the extent that it was not merely an expression of future intention it was as much a claim for damages as a claim to the right of possession. The same may be said of the original complaint filed in this action before the prayer for possession was stricken. Arguments of plaintiffs, and a rejection in discussion by the court of their contention that they were entitled to both repossession and damages, furnish no basis for depriving plaintiffs of both damages and possession. Defendant continued to question plaintiffs' right to damages and their right to possession until after this case was at issue, when it finally surrendered possession pursuant to terms of other provisions of the contract to be hereinafter further noticed and not by reason of any notice from plaintiffs. Its apology now that it could not safely admit that the plaintiffs' "forfeiture" was valid until there had been a determination by the court whether it had done the full amount of the work required of it would unduly

shift its contracted burden of performance from itself to others. Defendant should not be permitted to work to its positive gain the circumstances, as the jury now finds, that it was wrong in its contention that all of the required work had been done, nor should plaintiffs be penalized for having been proved more right by the verdict of the jury in this respect. Had there been a showing that in reliance upon, or in response to, plaintiffs' notice defendant had surrendered possession or otherwise changed its position in any way, the case may well have been different. But the facts shown here without dispute in the record, together with the finding of the jury that the defendant had not complied with its contract, demonstrated as a matter of law that there was no basis from which the jury could have found that there was a forfeiture or that the defendant otherwise was barred from recovery of damages. Salt Lake City v. Industrial Commission, 81 Utah 213, 17 P.2d 239; Rogers v. United Western Minerals Co., 8 Utah 2d 1, 326 P.2d 1019; Wilkin v. Shell Oil Co., 10 Cir., 1952, 197 F.2d 42, certiorari denied 344 U.S. 854, 73 S.Ct. 92, 97 L.Ed. 663, rehearing denied 344 U.S. 888, 73 S.Ct. 183, 97 L.Ed. 687.

The defendant apparently had abandoned its original theory of election of remedies. One of the reasons for this shift may have been the subsequently expressed views of the Court of Appeals of this circuit. Bernstein v. United States, 10 Cir., 1958, 256 F.2d 697. But in connection with its adopted theory of substantive rights which was anticipated and ruled upon in connection with the court's decision on defendant's motion to dismiss, Morgan v. Hidden Splendor, supra, 155 F.Supp. at page 260 et seq., it again is to be observed that the defendant introduced no evidence, and none otherwise appeared, indicating any reason in equity, either by way of reliance, change of position, or considerations of fairness, for resort to the doctrine of election from any viewpoint.

The prior position of plaintiffs that they had the right to recover both possession and damages by reason of defendant's failure to perform the $200,000 in exploration and development work contracted by it may not be as far-fetched as defendant assumes. The possibility still must be recognized that this exploration and development work, and especially the first installment of $150,000 thereof, was in the nature of an initial guaranty of the same class as the $80,000 down payment provided by the amendment.

The old lease contained a straight requirement that the lessee do exploration and development work on plaintiffs' mining claims by expending a minimum of $5,000 per year. The supplemental agreement of February 2, 1955 provided for the payment of $80,000 as consideration to plaintiffs for amending the old lease. Such amendment provided, among other things, that defendant would be entitled to credit as against its work obligations not only for exploration done on plaintiffs' claims themselves but for " *   *   * all work performed exclusively for the exploration and development of said claims, whether performed upon the leased premises or upon properties adjacent thereto, *   *   *." The amendment then further provides: "The exploration and development work to be performed by the Lessee *shall be not less than $200,000.00* before the first day of December, 1957. Of said $200,000.00, not less than $150,000.00 of said sum shall have been expended before the first day of February, 1956. Provided that after December 1, 1957, Lessee shall expend not less than $25,000.00 each year *during the existence of this Lease *   *   *.*" (Emphasis added.)

The new requirement for the $200,000 expenditure was not conditioned expressly upon the continuation of the lease as were the future $25,000 expenditures. Whether this would make the former more in the nature of a down payment, payable in future installments, which would be unaffected by termination of the basic contract, is a matter which I do not propose to explore again. I have heretofore accepted defendant's conten-

tion that they would not, but the fact remains that the proposition in view of the specific language of the contract is not free from doubt and this again emphasizes the invalidity of the defendant's present contention that merely because plaintiffs have claimed both the right to damages and the right to possession as upon forfeiture they are barred from recovery here.

The defendant's motion to set aside the judgment because of alleged errors in the charge concerning forfeiture and because plaintiffs allegedly had forfeited the lease by the notice in question is denied on the ground (aside from the verdict of the jury against the defendant on the issue) that as a matter of law the undisputed facts indicate that there was no such election and no such forfeiture as to relieve defendants from liability.

██ A somewhat different question is presented by defendant's motion for reduction of the verdict by $50,000, representing the installment of work due under the above quoted provision not later than the first day of December, 1957. Defendant cites cases indicating that even though there has not been actual forfeiture of a contract, assertions improperly questioning the opposing parties' rights will be deemed to suspend necessity of performing intervening conditions. Chapman v. Bowers, 180 Okl. 49, 67 P.2d 788; Hudspeth v. Schmelzer, 182 Okl. 416, 77 P.2d 1123. These and similar authorities indicate that one of the premises for their application is that defendant is ready, able and willing to proceed with the obligation declared to be suspended. In other words, it must be shown that the defendant would be ready, able and willing to go ahead but for the improper attack. The evidence in the case at bar is clear that the defendant was not at the time of the alleged forfeiture, and that it has not been at any time since, ready or willing to go ahead with its remaining obligations under the lease as amended. The jury found that it was in default. It is manifest that its broad claims to performance

because of work done largely for its own benefit amounted to subterfuge.

There is, however, another basis for the requested reduction which rests upon different principles and provisions of the agreement. Counsel's presentation on this point was beclouded by their excessive preoccupation with the theory of forfeiture based on plaintiffs' notice. Nonetheless, the notice of cancellation which defendant itself gave of the termination of the lease after the institution of this action appears controlling.

It was agreed that additional work in the amount of $50,000 would be performed not later than December 1, 1957. By notice dated October 29, 1957 defendant notified plaintiffs of its intention to surrender the lease and declared it to be terminated thirty days from that date (without prejudice to its other contentions). In the absence of evidence to the contrary it must be presumed that this notice was received by plaintiffs in the regular course of mail, more than thirty days before the obligation to perform the $50,000 installment of work accrued. The original lease provided that the lessee could terminate the lease by giving thirty days notice, and the apparent purpose of this provision was to give lessee the right to relieve itself of accruing obligations under the lease. Question may arise in integrating the original lease with the subsequent modifications concerning application of the termination provision to the $200,000 phase of the new contract but I have heretofore taken the view that this obligation was not an absolute one performable at all events irrespective of the continuation of the lease, and I will adhere to that view. Especially in this connection the conclusion seems justified. The circumstances revealed by the record do not indicate any special intent of reserving from the operation of the thirty-day termination clause this particular phase of the contract and neither party has introduced evidence to assist in the resolution of any ambiguity. Other provisions of the lease, where they were intended to be modified by subsequent

amendment, were specifically referred to in the amendments.

■ Despite the technical nature of the point and the brief time from the expiration of the notice before the obligation to perform the extra $50,000 of work would have accrued, I can see no reasonable basis of apportionment and I can see no escape from the conclusion that the lease having been terminated theretofore in accordance with the power reserved to the lessee, defendant was released from the obligations accruing on December 1, 1957, to make the $50,000 expenditure. The jury was instructed on the theory that there was no cancellation relieving the defendant of the obligation of performing this latter work. Reliance for reduction then was rested primarily by defendant upon its theory of suspension in connection with claimed forfeiture. The general problem, however, expressly was reserved by the court in connection with defendant's pre-verdict motion and requests to instruct. I do not think that it can fairly be said that defendant has waived the determinative point. Accordingly, I am of the opinion that judgment on the verdict as heretofore rendered should be reduced by $50,000 and as so reduced to the sum of $31,207 that it should stand. Such is the order.