## UTAH BOND & SHARE CO. v. CHAPPEL et al.

No. 4426.   Decided November 10, 1926.   (251 P. 354).

*Sterling K. Heppler*, of Richfield, and *Young, Boyle & Moyle* and *James M. Christensen*, all of Salt Lake City, for appellant.

*Bean & Hunt*, of Richfield, for respondents.

THURMAN, J.

Plaintiff, a corporation under the laws of Utah and doing business in Salt Lake City, alleges in its complaint, in two causes of action that on August 16, 1921, at Loa, Utah, defendants executed two promissory notes payable to J. C. Leggett or order, each note for the sum of $1,200 with interest at 8 per cent per annum, interest payable annually; that

the said notes were on said date delivered to the said Leggett who thereafter, before maturity, duly indorsed, assigned, and delivered the same to the Utah Incorporated Ranches Company, a corporation of the state of Utah; that said corporation, by its secretary and treasurer thereafter and before maturity, duly indorsed, assigned, and delivered said notes to the plaintiff; that one of said notes became due on May 1, 1923, and the other on December 15th of the same year. It is alleged in the complaint that plaintiff is now the lawful owner and holder of said notes; that no part of the principal or interest has been paid, except the sum of $100 on each note paid by Ernest McClellan, August 16, 1921; that $1,100 as principal on each of said notes and all of the interest thereon is now due and owing plaintiff, for which sum it prays judgment with costs.

Defendants, by their amended answer, admit the execution and delivery of the notes upon the conditions thereinafter alleged, and deny the remaining allegations of the complaint.

As a further defense, defendants allege that on or about August 16, 1921, J. C. Leggett falsely and fraudulently, with the intention then and there to cheat and defraud the defendants, represented to them that a certain jack, to wit, Jonathan No. 19211, was sound and healthy in every particular, and was a reasonably sure foal-getter; that said false and fraudulent representations were made by Leggett for the purpose of inducing defendants to purchase said jack and to make, execute and deliver to Leggett the notes set out in plaintiff's complaint; that the said jack was not sound and healthy, as represented by Leggett, but, on the contrary, was at the time sick and diseased; that said jack was not a reasonable foal-getter, and by reason of such sickness said jack was of no use for the service of mares, and was so sick that he died from the effects of said sickness; that, at the time said representations were made, Leggett well knew that the said jack was sick and that he was of no use whatever for the purpose of getting foals and

serving mares, or for any purpose whatever; that, believing and relying upon said representations, defendants bought said jack and conditionally delivered said notes to Leggett upon his express promise and agreement that the said notes would not be sold or negotiated, but that he would retain them in his possession, and the same might be paid for with mule colts at certain agreed prices; that, unless there were a sufficient number of mule colts begotten by said jack, the defendants were not to pay said notes. It is then alleged that the sickness of said jack was such that defendants did not discover the same for some time after the delivery of said notes and that upon discovery of said sickness defendants wrote to Leggett, directing their letters to the address he had given them, but received no answer to said letters, and defendants have never since been able to locate Leggett or ascertain his whereabouts, although they have diligently tried to find him. Defendants further allege that plaintiff is not a purchaser of said notes or either of them in due course, but, on the contrary, plaintiff acquired said notes, if it acquired them at all, after maturity and after it was advised that the said notes were obtained by said Leggett by fraud.

Defendants pray that plaintiff take nothing by its complaint; that said notes and each of them be held to be null and void, that plaintiff be required to surrender them to the court, and that each of them be canceled. Defendants pray for costs and such other relief as may be equitable.

The case was tried to a jury. Verdict was rendered for defendants and judgment entered thereon. Plaintiff appeals and assigns numerous errors, all of which will be considered, as far as material to a decision of the questions involved.

Plaintiff's contention is that it purchased the notes before maturity for value, and that it had no notice of the alleged fraud. The evidence introduced by plaintiff is conclusive in support of such contention.

Defendants' evidence was equally conclusive that the notes were procured by fraud. The allegations of their answer, as

far as the fraud of Leggett is concerned, was amply sustained by undisputed evidence. The uncontradicted evidence tended to show that the jack, Jonathan No. 19211, nothwithstanding his high-sounding title as a foal-getter was a monumental failure. He would serve only one or two mares a week and would never serve the same mare twice. This unexpected idiosyncrasy of Jonathan caused great disappointment to the defendants, who were farmers and had mares ready and willing to be served, and resulted in only about 10 per cent of the foals expected, whereas 60 per cent had been assured. That Jonathan was not sound and healthy when he was delivered to the defendants, and that he was sick and diseased and, at least, partially impotent and incapable of the service assured by Leggett is abundantly established by the evidence. It is also inferable from circumstances proved that Leggett knew of these infirmities when he sold and delivered the jack to the defendants, and when he represented to them that the jack was sound, healthy, and capable of the service required. It appears from the evidence that Jonathan was brought from some distant point in a covered wagon to a point within three miles of Loa. He was then removed from the wagon and compelled to walk the remainder of the way. Just how long it required him to cover that distance on that occasion does not appear, but there is evidence in another connection that, in order to travel the same distance, Jonathan required an hour and a half, at the end of which time he would appear to be completely exhausted. Leggett, when negotiating the sale warned the defendants to keep the jack carefully under control and not let him out of the stable, for if they did he was liable to kill or injure any other animal within his reach. There is, however, opinion evidence to the effect that Jonathan would shy at the approach of a sucking calf. In the month of December, 1921, nearly four months after he was purchased by defendants, Jonathan died. The immediate cause of his death does not clearly appear. No post mortem

examination was held, nor is it even suggested by plaintiff that he died from overwork, which would have been a complete defense to the charge of fraud. In the meantime, Leggett had disappeared. After disposing of the jack and procuring the notes and promising to return and advise the defendants how to care for the jack, he left and never returned. He also promised to furnish the defendants with some forms of contracts with which to do business with persons breeding mares to the jack, and he promised to keep the notes in his possession or under his control and that he would accept mule colts at stated prices in payment of the notes when due, and would not require payment in any other way. He represented that he was the owner of a ranch and wanted all the mule colts he could get, and he promised that, in the event that Jonathan died, he would furnish defendants another jack. When they found that the jack was a failure, they wrote Leggett several letters at the address he had given, only one of which was answered. The contents of the letter were not admitted in evidence. The evidence is quite conclusive that the notes were procured from the defendants by Leggett by means of fraudulent representations. In any event, the jury were warranted in arriving at that conclusion.

If this were the only question in the case, we would have no difficulty in affirming the judgment. But the controlling question is yet to be determined. The record shows that Leggett transferred the notes to the Utah Incorporated Ranches Company and that that company transferred them to the plaintiff August 24, 1921, just eight days after they were executed by the defendants. Just when Leggett transferred the notes does not appear, but it was within eight days from the time of their execution and delivery to him. The plaintiff's witness, who was secretary and treasurer of both the Utah Incorporated Ranches Company and the plaintiff company, testified that plaintiff paid value for the notes and had no notice whatever of the fraud relied on by defendants. This evidence is not contradicted,

unless it be by circumstances connected with the transaction. There is no direct or positive evidence in the record that plaintiff or any of its officers had knowledge of any fraud in the procurement of the notes.

The principal circumstance relied on by defendants relating to the question of plaintiff's knowledge that Leggett had procured the notes by fraud is the fact that the same persons are officers of the Incorporated Ranches Company and the plaintiff corporation. Conceding that to be true, standing alone, it does not necessarily follow, as matter of law, that the knowledge of one, of a particular fact, is imputable to the other if they were on opposite sides of the same transaction, dealing at arm's length one with the other, and if their interests were, in fact, adverse. In such case, it cannot be successfully contended that the knowledge of one is imputable to the other, notwithstanding that the personnel of the officers may be the same. Two corporations may be so closely affiliated in business that one is a mere agent or instrumentality of the other. In such case, the law of agency would apply and the knowledge of the agent, within the scope of its authority, would be binding upon its principal. But such relationship is not inferable, in the instant case, from the record now before us. Even if the relationship were satisfactorily established, that the plaintiff corporation and the Incorporated Ranches Company were practically one and the same entity, so that knowledge possessed by one would be imputable to the other, still there is no substantial evidence before the court that the Incorporated Ranches Company had any knowledge whatever of Leggett's fraud in procuring the notes.

The most that can be said concerning this circumstance is that, inasmuch as Leggett represented that he was the owner of a ranch, and the Incorporated Ranches Company, as its name implies, might have been engaged in the ranching business, there might be a vague suspicion that Leggett had some connection with the Incorporated Ranches Company either as employe, agent, or otherwise. These circumstances,

coupled with the fact that Leggett transferred the notes to the Incorporated Ranches Company almost immediately after they were executed and delivered to him, and by that company were transferred at once to the plaintiff corporation, tend to strengthen the grounds for suspicion that there may have been a close connection between all the parties to the transaction. But, after all, it is only grounds for suspicion and fails to amount to proof of knowledge or bad faith on the part of the plaintiff. While the jury were warranted, as already stated, in finding that the notes were procured from the defendants by fraud, it was not justified in finding that the plaintiff had knowledge thereof or acted in bad faith. The fact that there was evidence that the notes were procured by fraud shifted the burden upon the plaintiff to prove by a preponderance of the evidence that it had no knowledge that the notes had been procured by fraud or of any circumstances amounting to bad faith. This burden the plaintiff in the instant case discharged by substantial evidence, which was wholly uncontradicted.

It is not our purpose, in the instant case, to enter at length upon a discussion of the law applicable to the questions presented here. The court during the present term has had occasion to give these questions a more thorough and exhaustive consideration. Our views are expressed by unanimous opinion in the case of *National Bank of the Republic* v. *Beckstead,* 250 P. 1033, not yet (officially) reported. In that case, the rights of the holder of a negotiable instrument in due course and a defective title which will shift the burden upon the holder of the note, together with authorities sustaining our views, are cited and exhaustively considered. We shall therefore, in the instant case, limit our presentation of the law to citing without comment some of the cases relied on by appellant and respondent and suggest an examination of the Beckstead Case for a more comprehensive expression of our views. The cases by appellant most pertinent to the question involved are as follows: *Peoples' Bank v. Reed,* 86 Kan. 245, 120 P. 339; *Huntington Roller Mills v.*

*Miller,* 60 Utah, 236, 208 P. 531; *First Nat. Bank v. Carey,* 153 Minn. 246, 190 N. W. 182; *Oliver v. Garlick* (C. C. A.) 2 F. (2nd) 132; *Myers v. Guardian T. Co.,* (C. C. A.) 296 F. 789; *Bank of Jordan Valley v. Duncan,* 105 Or. 105, 209 P. 149; *Nat. Bank v. Kendall* (Okl. Sup.) 240 P. 72; *Jenkins v. Johnson,* 116 Okl. 17, 243 P. 178; *Gaither v. First Nat. Bank of Muskogee,* 113 Okl. 111, 239 P. 461; *Cedar Rapids v. Zeff,* 119 Kan. 539, 240 P. 840.

The above cases state the law relating to the rights of a holder without notice of defective title and sustain appellant's contention. Many other cases are cited by appellant to the same effect, but, in view of the fact that we have referred the reader to the Beckstead Case, it is unnecessary to cite the remaining cases.

Respondent relies on the following authorities: 3 R. C. L. 1040; *Arnd v. Aylesworth,* 145 Iowa, 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638, and cases cited; *Leavitt v. Thurston,* 38 Utah, 351, 113 P. 77.

It will be found upon examination of the authorities cited in the Beckstead Case that many of the cases referred to in 3 R. C. L., supra, and the L. R. A. Case, supra, have either been expressly overruled or have been greatly discredited.

The court is of opinion that the evidence before the trial court was insufficient to sustain the verdict, and that the judgment is against law, for the reasons stated.

There are many other assignments of error, but it will not be necessary to consider them all. Such errors as relate to the admission of evidence and the instructions of the court will not be likely to occur again, when the authorities here approved and those cited in the Beckstead Case have been duly considered.

The notes in question were made payable at Richfield, Sevier county. The action was commenced in that county. The case was afterwards transferred to Loa, Wayne county, through some proceeding not appearing in the bill of exceptions. On the first day of the trial at Loa, prior to the taking of testimony, appellant's counsel ob-

jected to proceeding on the grounds that the case had been improperly transferred to Wayne county and demanded that it be returned to Sevier county. This question is not before us for review because the proceedings relating to changing the place of trial are not incorporated in the bill of exceptions, and the presumption is the change was properly made. *Broadbent v. D. & R. G. Ry. Co.,* 48 Utah, 598, 160 P. 1185; *Murphy Wholesale Groc. Co. v. Skaggs et al.,* (Utah) 248 P. 127.

While the objections raised at the trial and the demand that case be returned to Sevier county do appear in the bill of exceptions, no sufficient grounds were stated why the case should be returned. The question, although argued at great length by appellant, for the reasons stated, cannot be reviewed on appeal.

There is one other question that may arise in a future trial and therefore should be determined. In reply to the defendants' defense of fraud, plaintiff pleaded that defendants, after they discovered the alleged fraud of Leggett in procuring the notes, elected to sue him in an action at law for damages, thereby waiving the defense of fraud as against the plaintiff. In support of this pleading, plaintiff introduced in evidence a complaint filed by defendants against Leggett, in which they alleged a case of fraud similar to that set up their answer here, and prayed for damages in the sum of $2,400, the principal of the notes. It does not appear that the complaint was ever served. In fact, from what has already been made to appear, Leggett could not have been served for defendants were not able to find him. The court is far from being convinced that such a proceeding, under the circumstances enumerated, should be treated as an election of remedies so as to estop the defendants in the instant case from relying on their defense of fraud.

In *Register v. Carmichael* (169 Ala. 588, 53 So. 799), reported in 34 L. R. A. (N. S.) 309, a similar question arose.

The defendant in that case sought to estop the plaintiff by pleading a previous election of remedies. Plaintiff had commenced another form of action and had gone so far as to have a receiver appointed. The receiver had been discharged and an appeal taken from the order. In disposing of the question of estoppel, the court (169 Ala. 590, 53 So. 800), at page 311, says:

"The theory of the appeal is that plaintiff is estopped to sue on the cause of action alleged, because she had elected by her bill in chancery to assert an antogonistic right. But an election, to be conclusive, must be efficacious to some extent, at least. The mere bringing of a suit is not determinative of the right. The party against whom the estoppel is pleaded must have received some benefit under his election" (citing cases).

In the note to that case, the annotator, at p. 309, says that the clear weight of authority seems to sustain the Carmichael Case. See, also, 9 R. C. L. at p. 966, to the same effect. The question of election of remedies was considered by this court in *State ex rel. Dorset v. Morse*, 36 Utah, 362, 103 P. 969, and *Howard v. Paulson Co.*, 41 Utah, 490, 127 P. 284. These cases tend strongly to support respondents' contention. Upon this question, appellant calls our attention to the following authorities: Williston on Sales, vol. 2, pp. 1618, 1623, 1625; *Rockhill v. Creer*, 56 Utah, 119, 189 P. 668; *Lavine v. Whitehouse*, 37 Utah, 260, 109 P. 2, Ann. Cas. 1912C, 407; *Smith v. Columbus Buggy Co.*, 40 Utah, 580, 123 P. 580. These authorities recognize the rule that there may be an estoppel by an election of remedies, but I do not find, in the cases cited in the text, any case contravening the doctrine announced in the Carmichael Case which presented stronger grounds for a plea of estoppel than is presented in the instant case.

Besides all this, it is a matter of serious conjecture just what the nature of the action was that defendants attempted to institute against Leggett, in some respects, it had the characteristics of an action at law for damages; in others

it might be classed as an action in equity for recission and cancellation. It would certainly be going a long way to hold that defendants' action against Leggett was an election of remedies, and therefore an estoppel, when this court has difficulty in determining the nature of the action.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for a new trial, at respondents' costs.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.

STRAUP, J.

I concur in the judgment of reversal and in remanding the cause for a new trial. I do not concur in what is said concerning the subject of an election. The plaintiff, over the objection of the defendants, put in evidence a complaint filed by them against Leggett more than a year prior to the commencing of this action. In it it is alleged that Leggett sold the jack to the defendants and that, in payment of the purchase price, they gave him two promissory notes of $1,200 each; that Leggett falsely and fraudulently represented and warranted the jack to be sound and "a reasonably sure foal-getter"; that the jack was not sound, but was sick and disordered, and was not " a reasonably sure foal-getter," and because of such condition could not serve mares; that, within a reasonable time after the defendants discovered that the jack was not sound, etc., they "demanded of" Leggett "the return of their notes and canceled the said contract of sale, but" Leggett "failed and refused to return the said notes or either of them"; that by reason of his diseased condition, the jack "languished and died and was therefore a total loss" to the defendants; and that the defendants were injured and damaged in the sum of $100 for feed and care of the jack. Judgment was prayed for in the sum of $2,400 and interest, and for other and general relief. It is not shown that any other or further proceedings were had in that cause.

There are no cross-assignments of error, and thus the ruling admitting the complaint of the former cause in evidence is not before us. The only way the matter is sought to be made pertinent is by an assignment of error that the court, at plaintiff's request, refused to charge that, if the jury found "that, after the delivery of the jack to the defendants, there was a breach of any promise or warranty on the part of the seller, and that after said breach the defendants elected to sue the seller on account of such breach, then your verdict should be for the plaintiff in sum of $2,-906.44," the amount of the principal, with interest on the notes sued on.

A review of the ruling of the court's refusal to give such a charge is not dependent upon the subject or doctrine of an election. The request did not ask the court to charge the jury that the filing of such complaint or the commencing of such an action against Leggett constituted a confirmation of the notes, or a recognition of their validity, or an estoppel which estopped the defendants from pleading or claiming in this action the alleged infirmities of the notes, or that the allegations of the former complaint were inconsistent with the answer of the defendants in this action. Nor did the request ask the court to charge the jury what the legal effect of the filing of the former complaint by the defendants against Leggett was, so far as concerned the issues of this case. All that, by the request, was to be left to the jury and to permit them without guidance or hindrance to determine all the perplexing questions incident to remedial rights and conflicting theories.

Further, the doctrine of an election rests upon inconsistent or alternative rights or claims and only applies to cases where a party may, in vindication of his right, choose between modes of procedure upon conflicting theories. Comparing the former complaint with the answer of the defendants in this cause, I do not see any such element present, though the defendants had been actors in both causes, in-

stead of defendants in this. Thus, at the threshold, I do not see any application of the doctrine of election or estoppel arising from a choice of remedies. I do not see anything in the cited cases from this or other jurisdictions holding to the contrary. What facts the defendants may have averred in their complaint in the former action, if contrary to their testimony in this cause, may be used against them to contradict or weaken their testimony, but that is a different matter. If a conclusion be reached (1) that what the defendants averred in their complaint in the former action constituted a choice of remedy and inconsistent with the defense stated in this action, and the further conclusion be reached (2) that the plaintiff may, on the theory of an estoppel, avail itself thereof, then and not until then do we reach the question of whether (3) a mere filing of a complaint, without the complainant having received some benefit, constitutes an election or an estoppel. With the first two propositions established, I think I might readily enough concur in the third, that a mere filing of a complaint without benefit would not constitute an election. But until the first and second are established, which is not done, I think we have nothing to do with the third, and whatever may be said about it is, as I think, mere dicta.

As stated by Mr. Justice THURMAN, the proceedings relating to the change of venue are not settled or contained in the bill. They otherwise are no part of the judgment roll, and hence are not before us for review. The demand made that the case, when it was called for trial, be remanded to the county from which it was transferred necessarily involved the ruling and a review or reconsideration of the proceedings whereby and by reason of which the transfer was ordered. Such proceedings not being before us, we must presume the transfer was properly made, and, if that order was proper, the overruling of the demand to remand also was proper—except as to jurisdiction, the want of which is not here patent on the record.