**ESTATE COUNSELING SERVICE, INC.,**
a corporation, Appellant,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,** a corporation, Appellee.

No. 6769.

United States Court of Appeals
Tenth Circuit.

April 9, 1962.

528

Harley W. Gustin, Salt Lake City, Utah, for appellant.

Earl J. McHugh, of Brown, Wood, Fuller, Caldwell & Ivey, New York City, for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

This action was brought in the court below by appellant, as plaintiff,[1] to recover damages for alleged fraud, breach of fiduciary duties in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) and Rule X-10B-5 promulgated thereunder. The suit resulted from a transaction involving the purchase of corporate common stock by the plaintiff, through the defendant as a broker. The appellee, defendant and third-party plaintiff below,[2] answered, denying fraud or breach of fiduciary relationship in the transaction, raised certain affirmative defenses and counterclaimed against the plaintiff for the amount of $21,217.13, the amount of the loss it occasioned by the stock transactions. As third-party plaintiff it named William A. Lang and John R. Coombs as third-party defendants, and sought to recover from them also for its financial loss in the stock purchase and sale. Plaintiff, and the third-party defendants, as part of their defense to defendant's counterclaim against them, alleged, affirmatively, the rescission of the contract to purchase the stock.

After the issues were joined and an extensive pre-trial conference had, the Motion for Summary Judgment, on behalf of defendant, appellee here, was sustained. That order of the trial court is challenged by this appeal.

The facts necessary for the disposition of the appeal are clear and uncontroverted from the record before us.

On September 26, 1959, Jack R. Coombs, as President of appellant corporation, observed that common stock of Studebaker-Packard Corporation, whether traded under "regular way" or "when issued" contracts on the New York Stock Exchange was one of the ten most active stocks. He visited appellee's Salt Lake City branch office and obtained two bulletins relating to the stock. He thereafter talked with his friend and frequent business associate, William A. Lang, about the stock. Both had prior extensive dealings in securities as associates of brokerage firms. After this discussion, Lang talked on the telephone with Walter A. Roche, appellee's branch office manager in Salt Lake City, about the stock and was advised by Roche that Studebaker-Packard common stock "when issued" was a good speculation. Later the same day, Lang met and discussed with Kenneth Aitken, registered representative of defendant in the same city, the stock purchase. Lang indicated he was interested in buying 10,000 or 20,000 shares, and, if he bought, the purchase would be made in the name of appellant because of its tax loss carry forward. At this time all of the outstanding stock in plaintiff corporation was owned by Coombs and members of his family, the corporation was actually insolvent, had no regular office except the Coombs home and had no employees.

On September 29, 1959, Lang, Aitken and Coombs conferred, and as a result, the purchase order was given to defendant to buy on the New York Stock Exchange in plaintiff's name 20,000 shares of common stock on a "when issued" basis at a price not to exceed $15.00 or $15.50 per share. The order was relayed to defendant's New York office on September 30, by Roche, and on that day Coombs was advised by Aitken that the stock had been purchased. Later that day Aitken personally delivered to Coombs and Lang confirmations of the purchases and asked payment for the margin deposit but was not paid. On October 5 Roche advised Lang and Coombs that the margin deposit of between $85,000 and $90,000 on the transaction would have to be paid. In the meantime the stock had declined in price. Lang told Roche that an alternative to paying the margin deposit was the liquidation and cancellation of the account, and as far as he was concerned the account could be cancelled. Roche refused to consent to such a cancellation. Again on October 6 demands were made on Lang and Coombs for payment of the margin deposit and refused.

---

1. Hereinafter referred to as plaintiff.

2. Hereinafter referred to as defendant.

On October 5 Lang and Coombs consulted with and retained Gordon I. Hyde to represent plaintiff and them in the controversy. On October 7 Hyde sent a letter to the chairman of the board of defendant corporation. The letter was composed in collaboration with Lang and Coombs and detailed charges of misrepresentation and misconduct on the part of defendant's local representatives. This letter reiterated Lang's proposal to cancel the transaction.

Thereafter, and on October 8, the law firm of Keller, Bloomenthal and Lohf, also previously retained as counsel for Coombs, Lang and plaintiff sent another letter to the chairman of the board of defendant corporation as a follow-up of the Hyde letter, and in part, stated as follows:

"This letter is written at the request of Mr. Hyde's clients and, in the absence of Mr. Hyde from Salt Lake City, as a follow-up to his letter of October 7, 1959, and to make clear that the aforesaid letter should be considered as a formal demand that the subject order and transaction, insofar as it concerns your firm of Estate Counseling Services, Inc., and persons interested therein, be rescinded on the basis of the material misrepresentations, omissions, and breaches of fiduciary obligation by your firm stated or referred to in the aforesaid letter, and in particular, on the following grounds:"

This letter set forth seven grounds why the contract should be rescinded.

By telegram, dated October 15, defendant rejected this last demand, and advised that unless the margin deposit was received it would sell out the stock at the opening of New York Stock Exchange at 7:00 o'clock A.M. Mountain Standard Time on October 16. The margin deposit was not paid and the stock was sold by defendant. A deficiency in the account of plaintiff with defendant in the amount of $21,217.13 resulted.

The granting of the Summary Judgment was based upon the legal theory that plaintiff, appellant here, had abandoned its right to seek damages by reason of its choice of the alternative of rescission, and under Utah law an action for damages and a rescission are inconsistent and mutually exclusive. Contemporaneously, with the granting of defendant's Motion For Summary Judgment, and with the consent of the defendant, plaintiff and the third-party defendants were given a Summary Judgment upon the counterclaim of the defendant and third-party plaintiff. An appeal was taken only from the portion of the order granting defendant a Summary Judgment.

■ In our approach to the legal question before us, we must as the lower court did, assume for the purpose of the motion, that plaintiff was induced by fraud and breach of fiduciary duties, to place the order to purchase the stock.

■■ The whole doctrine of election of remedies is equitable and in applying the doctrine the court should be sensitive to equitable principles. In Minneapolis National Bank of Minneapolis, Kansas, v. Liberty Natl. Bank of Kansas City, 10 Cir., 72 F.2d 434, the court pointed out that the doctrine of election of remedy is disfavored in equity and should not be unduly extended. Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075. This Court, in Bernstine v. United States, 10 Cir., 256 F.2d 697, rejected the doctrine on a procedural ground. In diversity cases, we have acknowledged the doctrine as binding following the state substantive law. Berger v. State Farm Mutual Auto Insurance Company, 10 Cir., 291 F.2d 666; First Natl. Bank in Wichita v. Luther, 10 Cir., 217 F.2d 262; Kuhl v. Hayes, 10 Cir., 212 F.2d 37.

■ A fruitless attempt to recover on an unavailing remedy does not constitute an election which will deprive a person of rights which are availing by a different and appropriate remedy; the remedy must at least be to some extent efficacious in order to constitute an election. Southern Pacific Co. v. Bogert, 250 U.S. 483,

39 S.Ct. 533, 63 L.Ed. 1099; Commercial Bank of Spanish Fork v. Spanish Fork South Irr. Co., 107 Utah 279, 153 P.2d 547; Welsh, Driscoll & Buck v. Buck, 64 Utah 579, 232 P. 911; Detroit Heating & Lighting Co. v. Stevens, 20 Utah 241, 58 P. 193; Utah Bond & Share Co. v. Chappel, 68 Utah 530, 251 P. 354.

■ For the act to be effective as an election of remedies it must be decisive and unequivocal. Such election can be accomplished by legal proceedings or by "some other decisive act." Huhl v. Hayes, 10 Cir., 212 F.2d 37; Cook v. Covey-Ballard Motor Co., 69 Utah 161, 253 P. 196, 199. See 18 Am.Jur. 145, Election of Remedies, § 22.

In 1 A.L.R.2d 1084 at 1085, the following is stated under the annotation entitled, "Notice of rescission as irrevocable election when other party refuses to assent thereto."

> "In legal theory a rescission, as the word signifies, is a cutting back or severance of the contract relationship. A party entitled to avoid a transaction does so by giving notice to the other party of his decision to do so. By this notice the contract is abrogated * * *. Naturally the consent of the other party, and his return of the consideration, has never been deemed a prerequisite to the effectiveness of the annulment.

> "If the facts exist which justify a rescission by one party, and he exercises his right and declares a rescission in some effectual manner, he terminates the contract, and it cannot thereafter be made the basis of an action for damages caused by a breach of its covenants.

> "The doctrine of election of remedies applies in order to protect one from vexatious litigation, while the rule as to election of substantive rights has to do with the actual status of some property or contractual rights. That is to say, a person having the option to fix definitely a property or contractual right without reference to the consent or wishes of the other party to the transaction is bound by his exercise of the option."

■■ In Utah, it is well settled that one who is induced to make a sale or trade by the deceit of a vendee has the choice of two remedies upon his discovery of the fraud; he may affirm the contract and sue for his damages, or he may rescind it and sue for the property he has sold or what he has paid out on the contract. The former remedy counts upon the affirmance or validity of the transaction, the latter repudiates the transaction and counts upon its invalidity. The two remedies are inconsistent and the choice of one rejects the other, because the sale cannot be valid and void at the same time. Cook v. Covey-Ballard Motor Co., supra, 253 P. 196, 199; Kennedy v. Griffith, 98 Utah, 183, 95 P.2d 752; 18 Am.Jur. 134, Election of Remedies, § 11. In order for the rule to apply however there must be two or more coexistent remedies for the party to choose; Commercial Bank of Spanish Fork v. Spanish Fork South Irr. Co. supra, 153 P.2d 547, 551; the remedies open must be alternative and inconsistent; and there must be some decisive act, with knowledge of the facts, indicating a choice between the inconsistent remedies. Cook v. Covey-Ballard Motor Co., supra, 253 P. 196; cf. Rogers v. United Western Minerals Co., 8 Utah 2d 1, 326 P.2d 1019, 1021.

■ The "formal demand for rescission" sent on behalf of the plaintiff by Mr. Lohf was an unequivocal, clear and unconditional statement. In interpreting the letter the court considered the document as a whole, the words used, the circumstances surrounding the writing of the letter, the relative position and circumstances of the parties, and then ascertained the manifest intent of the parties therefrom.

If there was any doubt as to whether the appellant intended to terminate its contractual relations with the appellee when the letter was sent, this doubt was resolved prior to the filing of the suit when the appellant consistently refused

to meet the margin payment for the stocks purchased.

We agree with the findings of the trial court that the contention that there is an issue of fact with respect to the intent of the parties is wholly without merit. To submit to a jury the question of whether the letters manifested an intention to rescind the contract would be unthinkable. Such intention is manifested by the language of the letter so clearly that no room is left for doubt.

Furthermore, the equities of the situation do not justify departure from established principles, nor an extenuation of them. The appellee has not retained anything belonging to the appellant since nothing was ever paid to the appellee, even though frequent and repeated demands for the margin payment were made upon the appellant.

■ In view of the speculative nature of the transaction and with a fluctuating market, the law required the appellant to act promptly or waive its right to rescind. Where parties have the right to rescind, they cannot delay the exercise of that right to determine whether avoidance or affirmance will be more profitable to them. This is particularly true where the transaction is one of a speculative nature. Frailey v. McGarry, 116 Utah 504, 211 P.2d 840; Taylor v. Moore, 87 Utah 493, 51 P.2d 222; Justheim Petroleum Company v. Hammond, 10 Cir., 227 F.2d 629. So also where a party desires to rescind upon the grounds of misrepresentation or fraud he must, upon discovery of the fraud, announce his purpose and adhere to it. Shappirio v. Goldberg, 192 U.S. 232, 24 S.Ct. 259, 48 L.Ed. 419, quoted with approval in Taylor v. Moore, supra. In the transaction herein involved it would doubtlessly have been more advantageous for the appellant to have had the benefit of claiming a rescission of the contract if a loss was imminent, and to disclaim the rescission if a profit was apparent. It is for this very reason, under the facts in this case, that the trial court was correct in granting the motion for summary judgment.

We, therefore, hold that the letters of October 7 and 8, 1959, manifested the intention of the appellant to rescind the contract and was the acceptance by it of the choice between contract and no contract, a choice between substantive right or no right. The letters, therefore, constituted a final election to rescind, and thereafter, precluded plaintiff from maintaining an action to recover damages for breach.

■ The defendant, in support of the lower court's ruling, also urges that plaintiff's causes of action must fail because the plaintiff suffered no damages as a result of the stock transaction. Likewise, there is merit to that contention.

The record is clear: That plaintiff was purchasing the stock on a "seven day in and out transaction" or "a seven day deal," and it was intended that the stock purchased would be sold within seven days after the purchase; that at the end of the seven days the stock was selling below the purchase price; plaintiff, in the transaction, had parted with nothing of value; and had the purchase and resale of the stock, by the plaintiff, been carried out as intended, a loss and not a profit to the plaintiff would have resulted.

■ The law of Utah is well settled as to the necessary elements of a common law action for fraud and deceit. Those elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. Stuck v. Delta Land & Water Co., 63 Utah 495, 227 P. 791. Actions for fraud have failed because of lack of proof of damages. Kinnear v. Prows, 81 Utah 135, 16 P.2d 1094; Rummell v. Bailey, 7 Utah 2d 137, 320 P.2d 653; Roosevelt v. Missouri State Life Ins. Co., 8 Cir., 78

F.2d 752. In the latter case, the court referred to the situation as "fraud in the air." The measure of damages in such actions is the difference between the value of what is purchased and the value of what he would have had if the alleged misrepresentations by the defendant had been true. Hecht v. Metzler, 14 Utah 408, 48 P. 37; Kinnear v. Prows, supra. Cf. Alder v. Crosier, 50 Utah 437, 168 P. 83; Woodmont, Inc. v. Daniels, 10 Cir., 274 F.2d 132, 139. See also Annotation 124 A.L.R. 37.

The failure to show actual damages is also a fatal defect in the cause of action based on the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. That Act permits recovery of "his actual damages on account of the act complained of." "Actual damages," under the Federal rule of damages for fraud is the "out of pocket rule." In the Federal courts the measure of damages recoverable by one who through fraud or misrepresentation has been induced to purchase bonds or corporate stock, is the difference between the contract price, or the price paid, and the real or actual value at the date of the sale, together with such outlays as are attributable to the defendant's conduct. Or in other words, the difference between the amount parted with and the value of the thing received. Smith v. Bolles, 132 U.S. 125, 10 S.Ct. 39, 33 L.Ed. 279; Sigafus v. Porter, 179 U.S. 116, 21 S.Ct. 34, 45 L. Ed. 113; Hindman v. First Nat. Bank, 6 Cir., 112 F. 931, 57 L.R.A. 108, cert. den. 186 U.S. 483, 22 S.Ct. 943, 46 L.Ed. 1261; Tooker v. Alston, 8 Cir., 159 F. 599, 16 L.R.A.,N.S., 818; Chandler v. Andrews, 2 Cir., 192 F. 543; Nashua Sav. Bank v. Burlington Electric Lighting Co., C.C., 100 F. 673. Contra, see Southern Ice Co. v. Morris, 5 Cir., 219 F. 551; Towle v. Maxwell Motor Sales Corp., 8 Cir., 26 F.2d 209; Florence v. Crummer, 5 Cir., 93 F.2d 542, cert. den. 304 U.S. 563, 58 S.Ct. 944, 82 L.Ed. 1530.

According to this theory, the question is not what the plaintiff might have gained, but what he has lost by being deceived into the purchase; the defendant is liable to respond in such damages as naturally and proximately result from the fraud; he is bound to make good the loss sustained—such moneys as the plaintiff has paid out, with interest, and any other outlay legitimately attributable to the defendant's fraudulent conduct—but this liability does not include the expectant fruits of an unrealized speculation. Smith v. Bolles, supra, 132 U.S. 125, 10 S.Ct. 39.

The undisputed facts, as shown by the record, disclose plaintiff to have paid out nothing, therefore, it suffered no actual damages under either cause of action.

The judgment of the lower court sustaining defendant's Motion For Summary Judgment is affirmed.