Nathan **CHANOFSKY**, Plaintiff,

v.

The **CHASE MANHATTAN CORPORATION**, Defendant.

No. 74 Civ. 4376 (KTD).

United States District Court,
S. D. New York.

March 21, 1975.

Feder, Kaszovitz & Weber, New York City, for plaintiff; by Gabriel Kaszovitz, Murray L. Skala, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant; by William E. Jackson, New York City, of counsel.

## MEMORANDUM

KEVIN THOMAS DUFFY, District Judge.

A motion was made by the defendant The Chase Manhattan Corporation to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment pursuant to Rule 56 of the Rules. It was clear at argument of the motion that both sides agreed as to the facts as set forth in the affidavits. Both sides at that time decided to waive a jury. A suggestion was made that some expert testimony be taken to inform the Court as to the workings of the "stock market". While I certainly do not claim any expertise in the area, for some unstated reason, the parties agreed to waive any such offer of proof.[1] Under the circumstances, the parties agreed to have the case marked "submitted" on the facts contained in the affidavits, which had been agreed to and conceded by the parties.

This opinion therefore constitutes findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

At some time prior to May 10, 1974, the defendant, The Chase Manhattan Corporation, issued 6½% convertible subordinated debentures which were convertible into the Common stock of the corporation at a price of $57.50. On August 12, 1974, the plaintiff purchased at a cost somewhat in excess of $3,700 five of these convertible subordinated debentures, each having a face amount of $1,000. The plaintiff claims that these purchases were made in reliance upon certain earnings statements published by Chase on or about May 10 and July 26, 1974.

Apparently, these earnings statements contained an over-evaluation of the bond trading account of the defendant corporation's principal subsidiary, the Chase Manhattan Bank, N.A. On or about September 30, 1974, this over-evaluation was approximtaely 32.8 million dollars pre-tax, for 14.9 million dollars on an after-tax basis.

On October 2, 1974, David Rockefeller, the Chairman of the defendant corporation, announced that this over-evaluation had been discovered and "the corporation will re-state the financial reports of the corporation . . . to the previously reported quarters in 1974 . . ., after a final re-evaluation of the trading account inventory for the respective periods has been completed." The announcement continued by indicating "The resignation of the senior vice-president in charge of Chase's bond dealer account activities has been accepted as of October 1."

It should be noted that the 14.9 million dollar after-tax re-evaluation represented an unrealized loss and that even if it had been realized, it would be less than .08% of the defendant's total assets. As a result of market conditions since that time, this loss has been substantially reduced.

The day following the first announcement, the market price of the debentures held by the plaintiff declined. The market price of the other Chase equity issues similarly decined. In fact, for the three day trading period after October 2, 1974, the prices had declined by as much as 2¾ points. Thereafter, the Chase securities recovered in the market place and now stand at a price generally higher than that which pertained on October 2, 1974.

The plaintiff brought this action on behalf of "all persons who purchased equity securities of [Chase] in the open market from on or about May 10, 1974 to and including October 4, 1974." Eq-

---

1. The writer of this opinion spent some time as Regional Administrator of the New York office of the United States Securities and Exchange Commission.

uity securities are defined by plaintiff as "common stock and all securities convertible into . . . common stock."

The defendant attacks this broad class and indeed insists that the debentures held by the plaintiff cannot be considered as equity securities because the conversion privilege in the debentures, in view of market conditions, would during the relevant period have required the payment of a $9 to $12 plus premium.

Chase also contends that any misstatements were not material.

Chase also contends that the plaintiff has suffered no damage. It is sufficient for me to deal only with this latter claim.

It is important to note that plaintiff still holds the debentures which he purchased and that according to the tables produced to this Court it appears that plaintiff has now made a "paper profit" from the transaction. But the plaintiff complains that, while the market price has rebounded, it has not matched the increase in comparable securities or with the generally accepted market averages. It is his claim that the inadequacy of his "paper profit" and those of others similarly situated should be assessed as damages under Section 10(b) of the Securities Exchange Act.

Additionally, plaintiff claims as damages the difference between the actual value of the securities on May 10, 1974 and the price plaintiff paid for them on that date which, it is claimed, was inflated by reason of the overstatement of Chase's earnings.

As I have said before:

"The price of a stock [or a debenture] in the general market is controlled not only by the price-earnings ratios and such other mathematical formulae, but by the intuition or 'hunch' of the buyers and sellers of the stock. Once this element is exposed it follows necessarily that the adequacy or inadequacy of price is subjective."

\* \* \* \* \* \*

" . . . the price of a stock [or a debenture] is due not only to mathematical formulae but also to the intuition of the buyers and sellers and, indeed, to the whims and caprice of the crowd . . . ." *Gulf & Western Industries, Inc. v. Great A & P Tea Co., Inc.,* 356 F.Supp. 1066, 1071 (S.D. N.Y.1973), *aff'd* 476 F.2d 687 (2d Cir. 1973).

That is not to say that in the appropriate case this Court will not intervene to upset a situation where the "price" is grossly unfair but this is not such a situation. Here the price of the debentures rebounded to the former level within a few days.

To say that the plaintiff and the class he claims to represent were injured because the price did not advance as he (or they) might have expected when compared to other similar securities or to the various stock market averages leads to a situation where the damages claimed are based on the purest of speculation. As such, damages are not recoverable. Cf. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 155, 92 S. Ct. 1456, 31 L.Ed.2d 741 (1972) and *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 303 F.2d 527, 533 (10th Cir. 1971).

The rule of damages has been summarized and analyzed in a Note entitled *Damages in Rule 10b–5 Cases,* 26 Stamford Law Review, 371 (Jan. 1974), which states:

"The out-of-pocket measure of damages 'is the difference between the contract price, or the price paid, and the real or actual value *at the date of sale,* together with such outlays as are attributable to the defendant's conduct.' Such a formula has no tolerance for inclusion of a speculative factor in its compensation scheme. The guiding philosophy is 'not what the plaintiff might have gained, but what he has lost.'" [Emphasis in original.]

Here plaintiff never sold his debentures. He has no "out-of-pocket" loss. Any damages awarded would have to be based on mere speculation, guess or conjecture. Upon such quicksand no suit for fraud under the Securities Exchange Act of 1934 can stand.

Judgment will enter for the defendant with costs to be taxed against plaintiff.

Settle judgment on notice.